**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIE C. RANDALL, Major,
<u>Plaintiff-Appellant,</u>

v.

UNITED STATES OF AMERICA; THE
UNITED STATES ARMY CLAIMS
SERVICE; TOGO D. WEST, JR.,
Secretary of the Army; DAVID R.
KINNEER, Executive Secretary, Army

No. 95-2504

Board for Correction of Military
Records; DEPUTY CHIEF, Appeals
and Corrections Branch; OFFICERS,
Special Review Board (OSRB);
REINARD M. LOTZ, Colonel; STEPHEN
GARRET, Colonel; ORA J. WILLIAMS,
Lieutenant Colonel,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Franklin T. Dupree Jr., Senior District Judge.
(CA-94-866-5-D)

Argued: May 7, 1996

Decided: September 10, 1996

Before WILKINSON, Chief Judge, ERVIN, Circuit Judge, and
CHAPMAN, Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Chapman wrote the
opinion, in which Chief Judge Wilkinson and Judge Ervin concurred.

**COUNSEL**

**ARGUED:** Clifford Leon Lee, II, THE LEE LAW FIRM, P.A., Fayetteville, North Carolina, for Appellant. Bruce Charles Johnson, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Eileen C. Moore, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

**OPINION**

CHAPMAN, Senior Circuit Judge:

Plaintiff-Appellant, Willie C. Randall, a Major in the United States Army, filed this action after he was denied promotion to the rank of Lieutenant Colonel. Plaintiff alleges that his nonselection was the result of racial discrimination, that he was denied due process, and that the Army failed to follow its own regulations in reviewing his request for correction of his military records. The district court granted Defendants' motion to dismiss or, in the alternative, for summary judgment, and Plaintiff appealed. For the reasons that follow, we affirm.

I.

Plaintiff is a United States Army Major in the Quartermaster Corps and is currently stationed at Fort Bragg, North Carolina. He was originally commissioned in the Army Reserve on May 9, 1976, after completing the Reserve Officer Training Corp (ROTC) Program and graduating from college. He was promoted to First Lieutenant on August 29, 1978, and to Captain on September 15, 1980. He received an appointment to the regular Army from the President and was confirmed by the Senate on November 10, 1982. On January 1, 1988, he was promoted to the rank of Major. By all accounts, Plaintiff has had a distinguished military career. He has continued his formal education while in the Army, has received several military awards, and served with distinction in Saudi Arabia during Operations Desert Shield and Desert Storm.

Plaintiff anticipated being promoted in due course to the rank of Lieutenant Colonel. On May 16, 1991, however, he received a letter from Lieutenant Colonel James M. Colvin, Chief of the Quartermaster Branch of the United States Army, indicating that Plaintiff's 1990 Officer Evaluation Report ("OER") might present a problem for his continued promotion. LTC Colvin stated that the rating for potential in Plaintiff's 1990 OER "is below average compared to [his] contemporaries" and that "a continuation in this direction may have a serious impact on [his] potential for promotion." S.A. at 289.

In response to LTC Colvin's letter, Plaintiff visited the Quartermaster Branch on July 31, 1991 to review his military records to determine the source of the unfavorable material referred to by LTC Colvin. When Plaintiff reviewed his records, he discovered that his OER for the period from January 1, 1990 to December 31, 1990 contained an unfavorable rating of his potential.[1] Plaintiff also discovered two additional OERs that reflected similar unfavorable ratings of his potential. Those OERs rated Plaintiff from May 5, 1982 to May 9, 1983 (OER #1) and from May 10, 1983 to November 16, 1983 (OER #2). Plaintiff believed that all three OERs contained inaccurate ratings of his potential because the ratings were arguably inconsistent with the written comments contained in another part of the OER.[2]

_____

[1] Part VII(a) of the OER contains nine vertical blocks on which the senior rater assesses the ratee's potential by placing a mark in one of the blocks. AR 623-105, ¶ 4-16(d)(1) (Mar. 31, 1992), S.A. at 358. On Plaintiff's 1990 OER, the third block is marked with an"X." J.A. at 129. Although this selection is in the top third of the nine possible blocks, it reflects an unfavorable rating when compared with the senior rater's profile, which measures how that particular officer rated the other individuals he is responsible for rating. See AR 623-105, ¶ 4-167(d)(5), S.A. at 358. Plaintiff's three-block rating is below center of mass, or below average, on the senior rater's profile, because, of the nineteen officers rated by that particular senior rater, twelve received a two-block rating for potential, six (including Plaintiff) received a three-block rating, and one received a four-block rating. J.A. at 129.

[2] Part VII(b) of the OER contains a space for the senior rater to provide written comments about the ratee. That portion of the OER can include either an explanation of the potential evaluation in Part VII(a), or it can be an assessment of the ratee's actual performance. AR 623-105, ¶ 4-16(d)(2), S.A. at 358.

On November 27, 1991, Plaintiff filed an appeal of his 1990 OER to the Officers Special Review Board ("OSRB"). He sought to upgrade his potential rating or to expunge that portion of the OER from his records altogether. In addition, on December 12, 1991, Plaintiff appealed OERs #1 and 2 to the OSRB. He sought the same relief for OERs #1 and 2 that he sought for his 1990 OER, and he requested that the OSRB waive the time limitation in 10 U.S.C.§ 1552(b)**3** for the earlier OERs.

In support of his appeal of OERs #1 and 2, Plaintiff submitted to the OSRB supporting statements from several of his superior officers and some newspaper clippings highlighting his accomplishments. The OSRB did not deem it necessary to contact the senior rater who completed the OERs in question. Although the OSRB waived the statute of limitations as to OERs # 1 and 2, it nevertheless denied Plaintiff's appeal. According to the OSRB, Plaintiff "failed to provide clear and convincing evidence that supports his contention that the contested OERs are inaccurate." S.A. at 130.

The OSRB reached essentially the same conclusion with respect to Plaintiff's 1990 OER. In support of that appeal, Plaintiff again submitted favorable testimonials from several of his contemporaries and superior officers, as well as a certificate and citation for the award of the Bronze Star Medal he received from his service in the Gulf War

_____

**3** Section 1552(b) of Title 10 of the United States Code provides that a claimant may seek to correct his military records "within three years after he discovers the error or injustice." 10 U.S.C. § 1552(b). That section further provides that a Board for the Correction of Military Records "may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice." Id. Although this court need not address the applicability of this limitations period to this case, there is some debate about whether this statute of limitation is tolled during a service member's period of active service by the Soldiers' and Sailors' Civil Relief Act of 1940 ("SSCRA"), 50 U.S.C. § 525. Compare Detweiler v. Pena, 38 F.3d 591 (D.C. Cir. 1994) (holding that tolling provision in SSCRA tolls three-year limitations period in 10 U.S.C. § 1552(b) during service member's period of active duty; but that the equitable defense of laches may still prevent review), with Miller v. United States, 29 Fed. Cl. 107 (1993) (holding that SSCRA does not toll limitations period of 10 U.S.C. § 1552(b)).

4

during the rated period. The OSRB conducted a thorough investigation and interviewed the rating officials who completed Plaintiff's 1990 OER. The intermediate rater indicated that she had problems getting Plaintiff to follow her directions and that Plaintiff seemed to think he knew the best way to get things done. In addition, the senior rater stated that Plaintiff was "like a loose cannon on deck." S.A. at 144. The OSRB concluded that Plaintiff "failed to provide clear and convincing evidence that supports his contention that the contested OER is inaccurate and unjust and does not adequately reflect his performance or potential." S.A.at 146. Accordingly, the OSRB denied Plaintiff's appeal.

Plaintiff was denied promotion to Lieutenant Colonel on August 6, 1992.

Thereafter, he appealed the decision of the OSRB as to all three of his OERs to the Army Board for the Correction of Military Records ("ABCMR"). He requested that all three OERs be upgraded to reflect a center of mass rating for potential or, in the alternative, that the potential evaluation be deleted entirely from each report. In addition, he requested that his records be corrected to reflect that he was selected for promotion to the rank of Lieutenant Colonel by the 1990 promotion selection board.

On March 17, 1993, the ABCMR issued two memoranda of consideration denying Plaintiff's requests. The ABCMR determined that Plaintiff's appeal of OERs #1 and 2 was not timely. Also, the ABCMR stated that Plaintiff "has not presented and the records do not contain sufficient justification to conclude that it would be in the interest of justice to grant the relief requested or to excuse the failure to file within the time prescribed by law." S.A. at 127. As to the 1990 OER, the ABCMR similarly determined that Plaintiff"has failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice." S.A. at 141.

After Plaintiff exhausted his administrative appeals, he filed the instant action in the United States District Court for the Eastern District of North Carolina on November 14, 1994. He alleges three causes of action in his complaint: (1) employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

5

§ 2000e-16; (2) violation of the Due Process Clause of the Fifth Amendment to the United States Constitution; and (3) the Army's failure to follow its own regulations in reviewing his request for correction of military records. Plaintiff seeks to have the district court order that the adverse ratings in the three challenged OERs be upgraded or removed from his records; that he be retroactively promoted to Lieutenant Colonel with back pay; and that he be allowed to attend advanced military schools and be guaranteed an opportunity to compete for the rank of Colonel.

On January 30, 1995, Defendants filed a motion to dismiss or, in the alternative, for summary judgment. The district court granted Defendants' motion on July 3, 1995. The district court dismissed Plaintiff's Title VII claim under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, ruling that Title VII does not apply to uniformed members of the military. The district court also dismissed Plaintiff's constitutional claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The court found, inter alia, that Plaintiff's due process claims were nonjusticiable. Finally, the court granted summary judgment for Defendants under Fed. R. Civ. P. 56 with regard to Plaintiff's claim that the Army failed to follow its own regulations in reviewing his request to correct his military records. The court found that the ABCMR's actions were not arbitrary, capricious, or unsupported by substantial evidence.

Plaintiff appeals from the district court's order of July 3, 1995. We address each of Plaintiff's allegations of error below.

II.

Plaintiff's first cause of action is for alleged employment discrimination in violation of Title VII. Plaintiff, who is an African American, alleges that his unfavorable OERs were the result of improper racial discrimination. He contends that the district court erred in dismissing his discrimination claim.

This court reviews de novo the district court's dismissal of Plaintiff's Title VII claim for lack of subject matter jurisdiction. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994).

6

Section 717 of Title VII, 42 U.S.C. § 2000e-16(a), provides, in relevant part, "All personnel actions affecting employees or applicants for employment . . . in military departments as defined in section 105 of Title 5 . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." As the district court correctly recognized, every federal court of appeal that has addressed the issue has held that Title VII does not apply to uniformed members of the military. E.g., Roper v. Department of Army, 832 F.2d 247, 248 (2d Cir. 1987); Gonzalez v. Department of Army , 718 F.2d 926, 928-29 (9th Cir. 1983); Johnson v. Alexander, 572 F.2d 1219 (8th Cir.), cert. denied, 439 U.S. 986 (1978); see also Collins v. Secretary of Navy, 814 F. Supp. 130 (D.D.C. 1993). But see Hill v. Beckman, 635 F. Supp. 1228 (E.D.N.Y. 1986) (holding that uniformed service member may bring sex discrimination suit under Title VII) (rejected by Roper, supra). Those courts have recognized the difference between the definition of the term "military departments" as used in 42 U.S.C. § 2000e-16 and the term "armed forces." Under this distinction, the term "military departments" includes only civilian employees of the Army, Navy, or Air Force; while the term "armed forces" refers to uniformed military personnel.**4**Gonzalez, 718 F.2d at 928. The court in Gonzalez reasoned that Congress recognized the difference between the two terms when it drafted section 717 to apply specifically to "military departments." The Gonzalez court found support for its interpretation of section 717 in the legislative history of the statute. Id.

This court agrees that Congress intended to include only civilian employees of the military departments, and not uniformed service members, within the reach of Title VII. Therefore, the district court

_____

**4** Section 102 of Title 5 of the United States Code, which is specifically referenced in 42 U.S.C. § 2000e-16, provides that "[t]he military departments are: The Department of the Army[;] The Department of the Navy[; and] The Department of the Air Force." 5 U.S.C. § 102. Section 101(a)(8) of Title 10 of the United States Code contains virtually the identical definition of the term "military departments." See 10 U.S.C. § 101(a)(8). Significantly, however, 10 U.S.C.§ 101 contains a separate definition of the term "armed forces," which is defined to mean "the Army, Navy, Air Force, Marine Corps, and Coast Guard." 10 U.S.C. § 101(a)(4).

was correct in dismissing this count of Plaintiff's complaint under Fed. R. Civ. P. 12(b)(1) for want of subject matter jurisdiction.

III.

Plaintiff's second cause of action is for violation of his Fifth Amendment right to due process. The district court dismissed this cause of action under Fed. R. Civ. P. 12(b)(6), ruling that the allegations presented a nonjusticiable issue.

We review a dismissal under Rule 12(b)(6) de novo, construing the factual allegations in the light most favorable to the plaintiff. Biggs v. Meadows, 66 F.3d 56, 59 (4th Cir. 1995)."Dismissal for failure to state a claim is proper where `it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Id. (quoting Hinshon v. King & Spalding, 467 U.S. 69, 73 (1984)).

The district court construed Plaintiff's complaint as alleging a cause of action under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). In Bivens, the United States Supreme Court held that a plaintiff could sue federal officers individually for damages caused by constitutional torts committed under color of their authority. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).

We have some serious reservations about whether the district court should have implied a Bivens action from the allegations in Plaintiff's complaint. Although Fed. R. Civ. P. 8(c) provides that "[a]ll pleadings shall be so construed as to do substantial justice," this court has imposed a heightened pleading requirement for plaintiffs asserting actions against federal officials under Bivens . See Dunbar Corp. v. Lindsey, 905 F.2d 754, 764 (4th Cir. 1990) ("We agree . . . that a `heightened pleading standard' is highly appropriate in actions against government officials."). The allegations in Plaintiff's complaint likely do not contain the requisite specificity to be appropriately reviewed as a Bivens action.

Nevertheless, we agree with the district court's ultimate conclusion that Plaintiff cannot recover under Bivens for the alleged due process

8

violations of Defendants. In <u>Chappell v. Wallace</u>, 462 U.S. 296 (1983), the Supreme Court specifically held that"enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." <u>Id.</u> at 305. The <u>Chappell</u> Court determined that the unique disciplinary structure of the military and Congress's plenary authority over the armed forces presented "'special factors counselling hesitation'" to allowing a <u>Bivens</u>-type action by servicemen against their superiors. <u>Id.</u> at 298, 304 (quoting <u>Bivens</u>, 403 U.S. at 396)). The Court noted that Congress has provided specific remedies for complaints and grievances of servicemen, such as applying to the boards for the correction of military records under 10 U.S.C. § 1552(a).

Although the specific language of <u>Chappell</u> prohibits suits by enlisted service members against their superior officers, the Supreme Court in <u>United States v. Stanley</u>, 483 U.S. 669 (1987), specifically held that "no <u>Bivens</u> remedy is available for injuries that `arise out of or are in the course of activity incident to service.'" <u>Id.</u> at 684 (quoting <u>Feres v. United States</u>, 340 U.S. 135, 146 (1950)); <u>see also</u> <u>Mickens v. United States</u>, 760 F.2d 539, 540 (4th Cir. 1985) (per curiam) (holding that the rationale of <u>Chappell</u> bars a <u>Bivens</u>-type suit brought by a subordinate officer against a superior officer), <u>cert. denied</u>, 474 U.S. 1104 (1986).

This court agrees with the district court's determination that Plaintiff's allegations "arise out of or are in the course of activity incident to service." Therefore, the district court was correct in dismissing Plaintiff's due process cause of action for failure to state a claim.**5**

_____

**5** We do not reach the district court's alternative ruling that Plaintiff cannot demonstrate a property interest in a military promotion or continued military service, or a liberty interest in preserving his good name and reputation. <u>See, e.g.</u>, <u>Blevins v. Orr</u>, 721 F.2d 1419, 1421-22 (D.C. Cir. 1983) ("[I]t is clear that military promotion decisions <u>simpliciter</u> are not susceptible to due process challenges, inasmuch as there exists no property or liberty interest in a military promotion <u>per se</u>."); <u>Sims v. Fox</u>, 505 F.2d 857, 860-64 (5th Cir. 1974) (en banc) (holding that serviceman failed to demonstrate property or liberty interest in challenging his discharge from Air Force), <u>cert. denied</u>, 421 U.S. 1011 (1975).

IV.

Before reaching the merits of Plaintiff's appeal as to the remaining cause of action, we must address the issue of jurisdiction, both in the district court and in this court. It is well settled that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co., 114 S. Ct. 1673, 1675 (1994). Although neither party has challenged the jurisdiction of this court or the district court, the Supreme Court has stated that "every federal appellate court has a special obligation to `satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it." Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986) (quoting Mitchell v. Maurer, 293 U.S. 237, 244 (1934)). The court's concern about jurisdiction in this case stems primarily from the district court's failure to address the issue of sovereign immunity.**6**

As the Supreme Court has recognized, "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). Furthermore,"a waiver of the traditional sovereign immunity `cannot be implied but must be unequivocally expressed.'" United States v. Testan , 424 U.S. 392, 399 (1976) (quoting United States v. King, 395 U.S. 1, 4 (1969)).

Here, the district court rejected the only basis for jurisdiction alleged in Plaintiff's complaint: the Little Tucker Act, 28 U.S.C. § 1346(a)(2). The district court examined Plaintiff's allegations and inferred jurisdiction under the general federal question jurisdiction statute, 28 U.S.C. § 1331.**7** However, section 1331 "is not a general

_____

**6** Plaintiff's cause of action under Title VII, were it viable, would not present the same concerns of sovereign immunity, because 42 U.S.C. § 2000e-16 contains an express waiver of sovereign immunity for actions covered by the statute. E.g., Salazar v. Heckler, 787 F.2d 527 (10th Cir. 1986) (stating that 42 U.S.C. § 2000e-16(c) is a clear expression of consent to suit against the United States by federal employees covered by subsection (a)).

**7** Section 1331 provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

10

waiver of sovereign immunity. It merely establishes a subject matter that is within the competence of federal courts to entertain." Coggeshall Dev. Corp. v. Diamond, 884 F.2d 1, 4 (1st Cir. 1989) (citation omitted); Humphreys v. United States , 62 F.3d 667 (5th Cir. 1995) (holding that 28 U.S.C. § 1331, by granting district courts jurisdiction over constitutional claims, does not thereby waive sovereign immunity).

The district court's analysis of Plaintiff's case under Bivens, supra, is also not sufficient to remove the concern of sovereign immunity. Bivens did not abolish the doctrine of sovereign immunity of the United States. Any remedy under Bivens is against federal officials individually, not the federal government. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).

Generally, plaintiffs in cases such as this one, challenging a decision of a board for the correction of military records, have used one of two avenues to establish federal jurisdiction: the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491; and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706. Both of these statutes have been construed as waivers by the United States of sovereign immunity. E.g., United States v. Mitchell, 463 U.S. at 212 ("[W]e conclude that by giving the Court of [Federal] Claims jurisdiction over specified types of claims against the United States, the Tucker Act constitutes a waiver of sovereign immunity with respect to those claims."); Bowen v. Massachusetts, 487 U.S. 879, 891-92 (1988) ("[I]t is undisputed that the 1976 amendment to [5 U.S.C.] § 702 was intended to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity in cases covered by the amendment . . . .").

As noted earlier, Plaintiff's complaint invokes the Little Tucker Act, 28 U.S.C. § 1346(a)(2), as the sole basis for jurisdiction in this case. J.A. at 7. We have recognized that Fed. R. Civ. P. 8(a)(1) requires plaintiffs to affirmatively plead the jurisdiction of the federal court. Dracos v. Hellenic Lines, Ltd., 762 F.2d 348, 350 (4th Cir.), cert. denied, 474 U.S. 945 (1985). However, Rule 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." As the United States Court of Appeals for the Tenth Circuit has stated, "Although a plaintiff must allege essential jurisdictional facts in a

11

complaint, federal jurisdiction may be sustained on the basis of a statute not relied on or alleged in the pleadings." Celli v. Shoell, 40 F.3d 324, 328 (10th Cir. 1994). Thus, if the allegations in Plaintiff's complaint are sufficient to support jurisdiction under a provision other than the Tucker Act, such as the APA, this court is authorized to examine the case under that provision.

The interplay between the Tucker Act and the APA is somewhat complicated and raises some significant issues of federal court jurisdiction. Determining the proper statutory framework for the district court's jurisdiction in this case is critical because it affects the appellate jurisdiction of this court. The United States Court of Appeals for the Federal Circuit, not the regional courts of appeals, has exclusive jurisdiction over appeals in cases based "in whole or in part" on the Tucker Act. 28 U.S.C. § 1295(a)(2). The provision of 28 U.S.C. § 1295(a)(2) is mandatory and cannot be waived by the parties, because it relates to the subject matter jurisdiction of this court. Trayco, Inc. v. United States, 967 F.2d 97, 100 (4th Cir. 1992). Accordingly, if Plaintiff's action were properly before the district court under the Little Tucker Act, the appeal therefrom would have to go to the Federal Circuit, not to this court.

In addition, this court is cautious about trespassing into the province of the Court of Federal Claims and the Federal Circuit to decide non-tort actions against the United States. As the United States Court of Appeals for the D.C. Circuit has recognized,"a primary purpose of the [Tucker] Act [is] to ensure that a central judicial body adjudicates most claims against the United States Treasury." Kidwell v. Department of Army, 56 F.3d 279, 284 (D.C. Cir. 1995) (citing United States v. Hohri, 482 U.S. 64, 71-73 (1987)). The Court of Federal Claims and the Court of Appeals for the Federal Circuit have "extensive experience reviewing decisions of corrections boards in military pay cases." Mitchell v. United States, 930 F.2d 893, 896 (Fed. Cir. 1991). With these basic principles in mind, we turn our analysis to whether the Tucker Act or the APA provides the appropriate jurisdictional foundation for this case.

A.

The APA generally provides that a person who claims to have suffered a legal wrong because of agency action is entitled to judicial

12

review of that action. 5 U.S.C. § 702. The waiver of sovereign immunity in the APA is limited to suits seeking relief"other than money damages." Id. In addition, review under the APA is available only for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (emphasis added). This limitation has been interpreted to preclude review under the APA when a plaintiff has an adequate remedy by suit under the Tucker Act. See, e.g., Alabama Rural Fire Ins. Co. v. Naylor, 530 F.2d 1221, 1230 (5th Cir. 1976) ("Section 704 of the APA provides that judicial review is inappropriate where there exists some other adequate remedy in a court, and the availability of a remedy in the Court of Claims under the Tucker Act has been held to be an adequate remedy."); see also Bowen v. Massachusetts, 487 U.S. 879, 901 n.31 (1988) ("[S]uits under the Tucker Act in the Claims Court offer precisely the sort of `special and adequate review procedures' that § 704 requires to direct litigation away from the district courts."). Therefore, to determine whether Plaintiff's suit is cognizable under the APA, the court must first examine whether he has an available remedy under the Tucker Act.

The Tucker Act actually consists of two parts: 28 U.S.C. § 1491, and 28 U.S.C. § 1346(a)(2), which is commonly known as the "Little Tucker Act." The Tucker Act grants jurisdiction to the United States Court of Federal Claims "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, . . . or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. The Little Tucker Act makes the jurisdiction of the Court of Federal Claims concurrent with the district court for civil actions or claims against the United States for $10,000 or less. 28 U.S.C. § 1346(a)(2). If a plaintiff's claim is for more than $10,000, he must bring the action in the Court of Federal Claims.**8** See United States v. Hohri, 482 U.S. 64, 67 n.1 (1987).

_____

**8** It is not clear from Plaintiff's complaint whether this case would satisfy the jurisdictional amount requirement of 28 U.S.C. § 1346(a)(2), because the complaint contains no prayer for a specific amount of monetary damages. A plaintiff can waive damages in excess of $10,000 to remain in district court, see, e.g., Hahn v. United States, 757 F.2d 581, 587 (3d Cir. 1985); however, there is no indication that Plaintiff has done so here.

13

The district court rejected Plaintiff's use of the Tucker Act to establish jurisdiction in this case, because the court concluded that his claims were primarily for equitable relief. J.A. at 83. The court determined that Plaintiff's claim for money damages in the form of back pay was merely subordinate to his equitable claims. Although the actual language of the Tucker Act does not specifically prohibit the Court of Federal Claims from issuing injunctive relief, the United States Supreme Court has recognized, as a general rule, that "the Court of [Federal] Claims has no power to grant equitable relief." Richardson v. Morris, 409 U.S. 464, 465 (1973) (per curiam). The Tucker Act does, however, authorize courts to award injunctive relief in limited circumstances, when such relief is necessary to provide an entire remedy and when the injunction is "an incident of and collateral to" an award of monetary relief. 28 U.S.C. § 1491(a)(2).**9**

The district court is correct in its assessment that Plaintiff's claim for injunctive relief is the essence of his complaint. The injunctive relief requested by Plaintiff would not be available under the Tucker Act because it would not be an incident of, or collateral to, a mone-

_____

**9** The relevant portion of the statute provides:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

28 U.S.C. § 1491(a)(2). This language authorizing injunctive relief in limited circumstances does not appear in the Little Tucker Act; however, it is generally recognized that district courts have authority under the Mandamus Statute, 28 U.S.C. § 1361, to order the same type of injunctive relief as the Court of Federal Claims. See 1 Moore's Federal Practice ¶ 0.65[2.-3], at 700.111; see also Richardson v. Morris, 409 U.S. at 466 ("`[T]he Tucker Act did no more than authorize the District Court to sit as a court of claims . . . .'") (quoting United States v. Sherwood, 312 U.S. 584, 591 (1941)).

14

tary award. See Adkins v. United States, 68 F.3d 1317, 1324 n.9 (Fed. Cir. 1995) ("[T]he Court of Federal Claims was without authority [under the Tucker Act] to direct the Secretary[of the Army] to promote [plaintiff] to the rank of colonel because such relief would not be subordinate or collateral to a monetary award."). Indeed, Plaintiff's claim for back pay[10] would only arise if Plaintiff's request for retroactive promotion were granted.

This case is different from a case where the plaintiff brings an action to review the decision of a board for the correction of military appeals after he has already been discharged from the service. See, e.g., Sanders v. United States, 594 F.2d 804, 810 & n.10 (Ct. Cl. 1979) (en banc). In such a case, a successful plaintiff has a cause of action for back pay from the date of his discharge to the date of the court's determination. See id. Here, by contrast, Plaintiff has no present claim for back pay because he is still serving in the Army without a loss of his position or pay.

The district court would have no authority to order the Secretary of the Army to promote Plaintiff to Lieutenant Colonel. As the United States Court of Appeals for the Federal Circuit recently recognized in a case factually similar to the instant case, a plaintiff's "prayer that the Court of Federal Claims direct the Secretary to promote him to the rank of colonel plainly was a request for impermissible `interfer[ence] with legitimate Army matters.' Courts will not interject themselves into the promotion process." Adkins, 68 F.3d at 1324 (quoting Orloff v. Willoughby, 345 U.S. 83, 94 (1953)); see also Voge v. United States, 844 F.2d 776, 780 (Fed. Cir.) ("This is like thousands of other routine personnel decisions regularly made by the services which are

_____

10 There is considerable uncertainty about whether an award of back pay is considered money damages or a form of equitable relief for purposes of determining whether such claims are cognizable under either the APA or the Tucker Act. In Bowen v. Massachusetts , 487 U.S. 879 (1988), the Supreme Court stated that "an order providing for the reinstatement of an employee with backpay" is a form of equitable relief, not damages at law. Id. at 893. In Ulmet v. United States, 888 F.2d 1028 (4th Cir. 1989), this court arguably adopted the Bowen Court's dictum and stated that an action for back pay was not exclusively within the Tucker Act. Id. at 1030-31.

15

variously held nonjusticiable or beyond the competence or the jurisdiction of the courts to wrestle with."), cert. denied, 488 U.S. (1988). The only possible relief that Plaintiff could get in this case would be for the district court to order that Plaintiff's military records be corrected and to remand the case for another review in due course by the appropriate promotion selection board. Because Plaintiff cannot receive a court-ordered retroactive promotion, there is no basis for back pay in this case and, therefore, no monetary damages on which to premise jurisdiction under the Tucker Act. Accordingly, the district court correctly concluded that the Tucker Act does not apply in this case. Since Plaintiff has no other adequate remedy in a court, review of his case is proper under the APA.

B.

Although the district court did not adequately articulate the basis for its jurisdiction in this case, it correctly analyzed the merits of Plaintiff's final cause of action. The district court granted summary judgment for Defendants on Plaintiff's claim that the Army failed to follow its own regulations in reviewing his request for correction of his military records.

We review a grant of summary judgment de novo , employing the same standards used by the district court. Swanson v. Faulkner, 55 F.3d 956, 964 (4th Cir.), cert. denied, 116 S. Ct. 417 (1995).

The district court's review of the ABCMR's decision is quite limited. As the district court properly recognized, such decisions can be set aside only "if they are arbitrary, capricious, or not based on substantial evidence." Chappell v. Wallace, 462 U.S. 296, 303 (1983); Robbins v. United States, 29 Fed. Cl. 717, 725 (1993) ("The function of the court is not to reweigh the evidence presented to the ABCMR. Rather, the court is charged with determining `whether the conclusion being reviewed is supported by substantial evidence.'") (quoting Heisig v. United States, 719 F.2d 1153, 1157 (Fed. Cir. 1983)).

After carefully reviewing Plaintiff's allegations and the record below, we agree with the district court's ruling that the facts, taken in the light most favorable to Plaintiff, cannot support a finding that the ABCMR acted arbitrarily or capriciously, or without substantial

16

evidentiary support, in denying Plaintiff's requests. Therefore, we determine that the district court was correct in granting Defendants' motion for summary judgment as to Plaintiff's third cause of action.

V.

For all of the foregoing reasons, the order of the district court granting Defendants' motion to dismiss or, in the alternative, for summary judgment, is hereby

<u>AFFIRMED</u>.

17