**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1591

BLAIR COLEMAN,

          Plaintiff – Appellant,

v.

FRANK KENDALL, Secretary of the Air Force,

          Defendant – Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.  Robert J. Conrad, Jr., District Judge.  (5:17-cv-00096-RJC-DSC)

Argued:  May 5, 2023                                          Decided:  July 26, 2023

Before AGEE and WYNN, Circuit Judges, and Henry E. HUDSON, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion.  Judge Wynn wrote the opinion, in which Judge Agee and Senior Judge Hudson joined.

**ARGUED:**  Alexandra Lawson, John Wilton Harris, UNIVERSITY OF NORTH CAROLINA SCHOOL OF LAW, Chapel Hill, North Carolina, for Appellant.  Caroline B. McLean, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:**  Tod M. Leaven, GRIMES TEICH ANDERSON, LLP, Asheville, North Carolina, for Appellant.  Dena J. King, United States Attorney, Julia K. Wood, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

WYNN, Circuit Judge:

Blair Coleman, an Air Force veteran, appeals from a decision of the Physical Disability Board of Review ("Board") declining to increase his disability rating, which would entitle him to greater benefits. The district court rejected Coleman's arguments that the Board was required to conduct a physical examination before making its decision and that its decision was arbitrary and capricious. For the reasons that follow, we affirm.

I.

A.

Coleman enlisted in the Air Force in 1997 and served as an active-duty staff sergeant. In September 2004, while deployed in Iraq, Coleman witnessed a rocket attack that severely injured a fellow airman. Following that incident, he began experiencing severe anxiety. In March 2005, the Air Force placed him on duty restriction and referred him to the Medical Evaluation Board. His examiner found that he would "fare exceedingly poorly in the deployed environment," and the Medical Evaluation Board referred him to an Informal Physical Evaluation Board. J.A. 23.[1] In September 2005, the Informal Physical Evaluation Board concluded that Coleman was unfit for military service and recommended discharge with a 10% disability rating. Coleman did not dispute that recommendation, and the Air Force adopted it and honorably discharged him with severance pay on October 24, 2005.

---

[1] Citations to the "J.A." refer to the parties' Joint Appendix filed in this appeal.

Because Coleman was medically separated after fewer than 20 years in the Air Force with a disability rating under 30%, he was not entitled to retirement benefits, such as health-care benefits. *See* 10 U.S.C. §§ 1201, 1203. If Coleman had received a 30% rating or higher, he would have been entitled to medical retirement from the Air Force with accompanying benefits. *See id.* § 1201.

Shortly after his discharge, Coleman applied for disability benefits through the Department of Veterans Affairs ("VA"). The VA conducted an examination on February 22, 2006, and in March, assigned Coleman a disability rating of 30% for anxiety. The VA then began paying him disability benefits.

Notably, VA disability ratings and associated benefits are distinct from the Air Force's. The VA separately assesses a service member and may determine a disability rating that varies from the Air Force's rating. *See Stine v. United States*, 92 Fed. Cl. 776, 795 (2010). While both the Air Force and VA use the Veterans Affairs Schedule for Rating Disabilities ("Rating Schedule"), they calculate disability ratings in different ways. The Air Force looks only to the disability at the time of separation, while the VA may consider how it develops over time. Or, in other words, the Air Force "uses the [Rating Schedule] to determine what compensation the service member is due for the interruption of his military career, while the [VA] is more holistically examining the individual's ability to engage in civilian employment." *Id.*

Under the Rating Schedule, mental disorders can be rated at 0%, 10%, 30%, 50%, 70%, or 100%. 38 C.F.R. § 4.130. A 10% rating is appropriate where the mental disorder causes "[o]ccupational and social impairment due to mild or transient symptoms which

3

decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication." *Id.* By contrast, a 30% rating applies where the disorder causes "[o]ccupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, [or] mild memory loss (such as forgetting names, directions, [or] recent events)." *Id.*

In 2008, Congress created the Physical Disability Board of Review as part of the Wounded Warrior Act. Wounded Warrior Act, Pub. L. No. 110-181, § 1643(a)(1), 122 Stat. 430, 465–67 (2008) (codified as amended at 10 U.S.C. § 1554a).  The Board's purpose was to retroactively review the fairness and accuracy of disability determinations made by military branches for members of the armed forces who were medically separated with a disability rating of 20% or less between September 11, 2001, and December 31, 2009, and who were therefore not eligible for retirement benefits. *See id.* Upon an eligible veteran's request, the Board must conduct a review and make a recommendation about the veteran's disability rating to the Secretary of the applicable branch. 10 U.S.C. § 1554a(c)–(d).

Following the Wounded Warrior Act, the Department of Defense issued guidance for conducting retroactive reviews. Under a 2008 Department of Defense Instruction, the Board must compare a military branch's rating with a veteran's VA rating "and consider any variance in its deliberations and any impact on the final [Physical Evaluation Board] combined disability rating, particularly" where, as here, the VA rating "was awarded within

4

12 months" of separation. J.A. 451 (Department of Defense Instruction 6040.44 (June 27, 2008) (amended June 2, 2009)).

Separately, in 2008, the Department of Defense ordered military branches to consider § 4.129 of the Rating Schedule in making *contemporaneous* disability determinations for service members. J.A. 476 (Policy Memorandum from the Office of the Under Secretary of Defense on Implementing Disability-Related Provisions of the National Defense Authorization Act of 2008 (Pub L. 110-181), at E7.2 (Oct. 14, 2008)). Section 4.129, a VA regulation, requires the VA to assign a minimum 50% disability rating to those separated for "a mental disorder that develops in service as a result of a highly stressful event [and] is severe enough to bring about the veteran's release from active military service." 38 C.F.R. § 4.129. The VA must then examine the servicemember within six months "to determine whether a change in evaluation is warranted." *Id.* The Department of Defense instructed that, in applying § 4.129 to current service members, the military branches must place members with disability ratings of less than 80% "on the Temporary Disability Retirement List . . . and re-evaluate[ them] within a timeframe that is not less than 90 days, but within 6 months, from the date of [such] placement." J.A. 476 (2008 Policy Memorandum, at E7.2.2).

A 2009 memorandum from the Department of Defense clarified that § 4.129 of the Rating Schedule was also applicable to the Board's *retroactive* reviews of disability ratings. J.A. 481–82 (Policy Memorandum from the Office of the Under Secretary of Defense on Requests for Correction of Military Records Relating to Disability Ratings for Post Traumatic Stress Disorder (July 17, 2009)). The memorandum instructed the Board

5

that, in applying § 4.129 retroactively, it should assign a minimum 50% rating for a retroactive six-month period after separation, and then determine the appropriate rating "based on the applicable evidence." J.A. 482 (2009 Policy Memorandum).

On April 16, 2011, Coleman filed an application for review with the Board. He asserted that he should have been medically retired at a rating higher than 10% because he still suffered from symptoms and had planned to spend his career in the Air Force.

The Board convened in November 2011 to consider Coleman's case and ultimately issued its decision in May 2012. First, the Board concluded that § 4.129 should apply retroactively in Coleman's case. But the Board nonetheless determined that 10% was the appropriate disability rating at his final discharge, consistent with the original rating from the Air Force. As a result, it recommended retroactively placing Coleman on the Temporary Disability Retirement List at a 50% rating for six months, followed by discharge at a permanent 10% rating on April 24, 2006. The Air Force accepted the Board's recommendation.

## B.

In June 2017, Coleman sued the Air Force under the Administrative Procedure Act ("APA"). He sought "an order directing [the Air Force] to increase [his] disability rating," J.A. 8, which would entitle him to additional benefits beyond what he received as a result of his VA disability rating. The Air Force moved to dismiss for lack of jurisdiction. The district court granted the motion, concluding that Coleman's complaint sought monetary, not injunctive, relief and therefore should have been filed in the Court of Federal Claims under the Tucker Act. But on appeal, this Court remanded for consideration of an affidavit

6

that Coleman had filed during the pendency of the appeal, where he waived any right to retirement pay.

On remand, the Air Force again moved to dismiss for lack of jurisdiction, and in the alternative, moved for summary judgment. The magistrate judge recommended denying the motion to dismiss in light of Coleman's waiver and granting the motion for summary judgment because the Board's decision was not arbitrary or capricious. Both parties objected, but the district court adopted the report and recommendation.

## II.

On appeal, Coleman presses two main arguments. First, he argues that the Board was required to order a new physical examination in its retroactive review of his disability rating. Second, he argues that the Board's decision was arbitrary and capricious. We reject both arguments. But before addressing Coleman's merits-based challenges, we take a brief detour to consider this Court's jurisdiction to review Coleman's appeal.

## A.

In its briefing before this Court, the Air Force does not challenge the district court's decision finding subject-matter jurisdiction.[2] Nonetheless, this Court must sua sponte evaluate whether jurisdiction is appropriate. *See Randall v. United States*, 95 F.3d 339, 344–45 (4th Cir. 1996). At issue is whether the essence of Coleman's complaint seeks injunctive relief, monetary relief up to $10,000, or monetary relief exceeding $10,000. If

---

[2] When pressed about this matter at oral argument, however, the Air Force continued to argue that the Court did *not* have jurisdiction over Coleman's claims.

the answer is the last, then under the Tucker Act, jurisdiction would be proper only in the Court of Federal Claims, and review of that court's decision would take place in the Federal Circuit.

The APA allows private parties to sue the federal government in district court over final agency actions, so long as they seek relief other than monetary damages "for which there is no other adequate remedy in a court." *Id.* at 346 (quoting 5 U.S.C. § 704). But where "a plaintiff has an adequate remedy by suit under the Tucker Act," they are precluded from review under the APA. *Id.*

The Tucker Act "grants jurisdiction to the United States Court of Federal Claims 'to render judgment upon any claim against the United States founded . . . upon . . . any regulation of an executive department, . . . or for liquidated or unliquidated damages in cases not sounding in tort.'" *Id.* (quoting 28 U.S.C. § 1491(a)(1)). Jurisdiction is exclusive in the Court of Federal Claims for claims over $10,000, while district courts have concurrent jurisdiction with the Court of Federal Claims for claims at or under $10,000. *Id.* at 347 (citing 28 U.S.C. § 1346(a)(2)). And notably here, "[a] plaintiff can waive damages in excess of $10,000 to remain in district court." *Id.* at 347 n.8. Typically, the Court of Federal Claims lacks power to grant equitable relief, although the Tucker Act does "authorize courts to award injunctive relief in limited circumstances, when such relief is necessary to provide an entire remedy and when the injunction is 'an incident of and collateral to' an award of monetary relief." *Id.* at 347 (quoting 28 U.S.C. § 1491(a)(2)).

To determine whether a plaintiff seeks primarily injunctive relief such that a district court has jurisdiction over his claim, courts must look to the "essence" of the complaint

8

and whether the relief requested is "not . . . an incident of, or collateral to, a monetary award." *Id.* For example, in *Randall v. United States*, this Court concluded that the district court had jurisdiction over a plaintiff's claims under the APA because the plaintiff primarily sought a retroactive promotion, and his "claim for back pay would only arise if" that injunctive relief were granted. *Id.* at 347 (footnote omitted). Accordingly, the Court held that the district court had jurisdiction to review the plaintiff's claim "that the Army failed to follow its own regulations" regarding his request for correction of his military records. *Id.* at 348.

In this case, Coleman's complaint seeks an injunction for the Board to "correct [his] discharge records to reflect medical retirement by reason of permanent disability with a physical disability rating of at least 30%." J.A. 20. Although he did not specifically request monetary relief, Coleman's complaint noted that the Board's "refusal to recognize the extent of [his] service-connected disability . . . depriv[ed] him of *military disability retirement pay* and other benefits." J.A. 7 (emphasis added). But later, by affidavit, Coleman stated he "wish[ed] to waive any right to military retirement pay" and identified the other nonmonetary benefits he hoped to receive by virtue of a higher disability rating— participation in TRICARE, the military health insurance program; access to on-base amenities and military vacation destinations; and eligibility for "space available" flights on military aircraft. J.A. 440–41.

Based on Coleman's waiver, the district court properly concluded that it had jurisdiction over Coleman's claims. As noted, plaintiffs may waive damages in excess of $10,000 to remain in district court, *see Randall*, 95 F.3d at 347 n.8, which Coleman has

9

done here by waiving any right to retirement pay.[3] Accordingly, we need not reach the question of whether, absent his waiver, the essence of his claim seeks injunctive relief.

B.

Moving to the merits, we first consider whether the district court properly granted summary judgment in this matter by rejecting Coleman's arguments that the Board was required to order a new physical examination prior to its determination of Coleman's disability rating. We review the district court's grant of summary judgment de novo. *Nat'l Audubon Soc'y v. U.S. Army Corps of Eng'rs*, 991 F.3d 577, 583 (4th Cir. 2021). And under the APA, we may set aside agency action of the Board only where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

We start with an overview of the applicable law. First, by statute, the Board's retroactive review of a member's disability rating "shall be based on the *records* of the armed force concerned *and such other evidence as may be presented* to the" Board. 10 U.S.C. § 1554a(c)(2) (emphases added). Thus, the statute itself does not require a physical examination. And the Department of Defense echoed a records-based review in a separate

---

[3] The Air Force argued below that Coleman could not waive retirement pay because if his disability rating were increased, he would be eligible by law for disability retirement pay under 10 U.S.C. § 1201. But veterans generally must opt between VA disability benefits—which Coleman already receives—and military retirement pay. *See* 38 U.S.C. § 5304(a)(1) (veteran cannot receive duplicate benefits); 38 C.F.R. § 3.750(c)(1)(i) (noting that "[a] waiver of military retired pay is necessary in order to receive disability compensation when a veteran is eligible for both military retired pay and disability compensation," with some exceptions not applicable here). As such, we see no issue with Coleman's preemptive waiver of retirement pay here.

10

memorandum, noting that "[e]vidence to be reviewed by the [Board] will be *primarily documentary* in nature" and that the Board "shall review the *complete case record* that served as the basis for the final Military Department" rating "and, *to the extent feasible, collect all the information necessary for competent review and recommendation*." J.A. 451 (2008 Instruction) (emphases added).

The VA regulation on which Coleman relies, in contrast, states that when the *VA* is making a *contemporaneous* disability determination, it must give veterans with certain mental disorders at least a 50% disability rating, and then must "schedule an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted." 38 C.F.R. § 4.129. Of course, § 4.129 does not generally apply to disability determinations by the military branches; however, the Department of Defense ordered the branches to consider the regulation when making contemporaneous disability determinations. J.A. 476 (2008 Policy Memorandum, at E7.2). The Department instructed the branches that members with disability ratings of less than 80% "must be placed on the Temporary Disability Retirement List . . . and re-evaluated within a timeframe that is not less than 90 days, but within 6 months, from the date of placement on" that list. *Id.*

Later, the Department gave guidance on how to also apply § 4.129 in *retroactive* reviews, explaining that the Board should assign a minimum 50% rating for a retroactive six-month period after separation, and then determine the appropriate rating "*based on the applicable evidence.*" J.A. 482 (2009 Policy Memorandum) (emphasis added).

11

None of this requires the Board to order a new physical examination before making its decision. The statute governing retroactive reviews contemplates a review of the applicant's records and other evidence presented to the Board. Only the VA regulation arguably requires a physical examination.[4] But Coleman has not pointed to any authority suggesting that the Board is bound by that portion of § 4.129, which by its terms does not contemplate retroactive reviews by the Board. Only the Department of Defense's memoranda make that regulation at all applicable—and yet those memoranda instruct that in applying § 4.129 retroactively, the Board should place members on the Temporary Disability Retirement List and then make further rating determinations "based on the applicable evidence." *Id.* In other words, the Department of Defense did not indicate that it was importing a physical-examination requirement that appears nowhere in the statute and would contradict the Department's guidance elsewhere that suggests the evidence considered will be primarily "documentary." J.A. 451 (2008 Instruction).

Nor was Coleman entitled to the statutory protections associated with contemporaneous placement on the Temporary Disability Retirement List. As background, current service members are placed on the Temporary Disability Retirement List when they would qualify for military retirement but for the fact that their disabilities are not determined to be "of a permanent nature and stable." 10 U.S.C. § 1202. Section 1210 sets

---

[4] The Air Force disputes whether § 4.129 requires a *physical* examination, as opposed to solely a records review. For the purposes of our analysis, we assume without deciding that the instruction to "*schedule* an examination" denotes a physical examination. 38 C.F.R. § 4.129 (emphasis added).

12

out procedures for when a service member is on the List, such as the timing for periodic examinations.

Here, Coleman argues that by retroactively placing him on that List, the Board was then required to abide by 10 U.S.C. § 1210(a), which states that "[a] physical examination shall be given at least once every 18 months to each member of the armed forces whose name is on" the Temporary Disability Retirement List "to determine whether there has been a change in the disability for which he was temporarily retired." Without a physical examination, Coleman contends, the Board could not remove him from the List or lower his 50% rating.

But again, there is no authority indicating that the physical-examination requirements of that statute apply to *retroactive* reviews. Rather, placement on the Temporary Disability Retirement List is simply how the military opted to abide by § 4.129's requirement of a temporary 50% rating. And § 1210, by its very terms, does not apply to members like Coleman. Section 1210 refers to physical examinations "to determine whether there has been a change in the disability *for which [a member] was temporarily retired*." 10 U.S.C. § 1210(a) (emphasis added). But a plaintiff like Coleman was not actually temporarily retired—only constructively and retroactively.

Additionally, any such physical examination would have been either impossible or, at best, wholly irrelevant to assessing Coleman's disability. Under Coleman's reasoning, the Board had two options to comply with such a requirement: travel back in time to conduct a physical examination at the time of Coleman's discharge or conduct an examination at the time of the Board's review in 2011—years after the relevant period for

13

assessing any disability. But in suggesting that the Board should have taken one of these routes, Coleman "misunderstands the role of the" Board. *Petri v. United States*, 104 Fed. Cl. 537, 555 (2012). As the Court of Federal Claims noted when rejecting a near-identical argument, an "examination and/or hearing [years later] would not have reflected [the plaintiff]'s state of health six months after his . . . separation, the time period pertinent for the [Board]'s determination of a permanent disability rating."[5] *Id.* at 558.

Coleman's interpretation, taken to its logical end, would swallow up the statutorily defined purpose of the Board's review. By arguing that he could not be taken off the List or have his temporary 50% rating lowered until the Air Force conducted a physical examination—an examination that necessarily could not occur until years after his retroactive placement on the List—Coleman pushes for an interpretation that would effectively grant a retroactive 50% rating for years to all individuals whose disabilities are reviewed by the Board and fall under § 4.129. But that defies the purpose of the Board: to ensure accurate disability determinations at the time of a member's discharge, "based on the records of the armed force concerned and such other evidence as may be presented to the" Board. 10 U.S.C. § 1554a(c)(2). We therefore reject Coleman's argument that the Board was required to order a new physical examination before making its determination.

---

[5] Of course, the VA performed a physical evaluation in February 2006—i.e., during the relevant time period—on which the Board relied in rendering its decision here, and which Coleman concedes "was the functional equivalent of what is required pursuant to 38 C.F.R. § 4.129." Opening Br. at 10. However, he argues that the Air Force, as the rating agency at issue, was legally required to conduct the examination, even though the regulation undisputedly did not apply to the Air Force in 2006.

14

C.

Finally, we consider whether the Board's decision to recommend that the Air Force discharge Coleman at a 10% disability rating was arbitrary and capricious and not supported by substantial evidence.

Our standard of review renders Coleman's challenge a tall task. Review of agency action under the APA is "highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Env't Coal., Inc. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009). We will find an action arbitrary or capricious where "the agency relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Audubon Soc'y*, 991 F.3d at 583 (quoting *Hughes River Watershed Conservancy v. Johnson*, 165 F.3d 283, 287–88 (4th Cir. 1999)). "But so long as the agency 'provide[s] an explanation of its decision that includes a rational connection between the facts found and the choice made,' its decision should be sustained." *Am. Whitewater v. Tidwell*, 770 F.3d 1108, 1115 (4th Cir. 2014) (quoting *Ohio Valley*, 556 F.3d at 192).

In reaching its decision here, the Board recognized that the Air Force could only offer compensation "for those medical conditions that cut short a service member's career, and then only to the degree of severity present at the time of final disposition," whereas the VA "is empowered to compensate service connected conditions and to periodically re-evaluate said conditions for the purpose of adjusting the veteran's disability rating should

15

the degree of impairment vary over[ ]time." J.A. 21–22. The Board decided to apply § 4.129, noting that although its applicability was questionable, any reasonable doubt had to be resolved in favor of Coleman pursuant to 38 C.F.R. § 4.3.[6]

Then, in determining Coleman's permanent rating at the time of his discharge in April 2006, the Board considered the Medical Evaluation Board examination performed in August 2005, a commander's statement from the same month, and the VA evaluation performed in February 2006. The August 2005 records noted that Coleman suffered mild anxiety most of the time, but that it hadn't affected his home station duty performance. The February 2006 examination indicated continued anxiety with mild to moderate symptoms, though Coleman was functioning well in his civilian job and doing well overall socially.

The Board ultimately concluded that a 10% rating was appropriate. It recognized that some impairment at the 30% level "could be surmised from some of the documented symptoms at the time of the" February 2006 examination, such as "anxiety, monthly panic attacks, and mild problems with intrusive memories, hypervigilance, exaggerated startle response, and mild avoidance." J.A. 23. Overall, however, the Board concluded that the various sources "documented [Coleman]'s generally intact interpersonal and occupational functioning with treatment, and the apparently 'mild or transient' nature of his symptoms since separation." J.A. 24.

---

[6] "When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant." 38 C.F.R. § 4.3.

Coleman primarily argues that the Board erred by placing more weight on the August 2005 evaluation, rather than the February 2006 evaluation that was closer to his retroactive discharge date. But the Board's decision is not arbitrary and capricious simply because it considered all recent evidence in its evaluation. And ultimately, we conclude that its decision was supported by substantial evidence, with a "rational connection between the facts found and the choice made."[7] *Ohio Valley*, 556 F.3d at 192 (citation omitted).

### III.

For the reasons detailed above, we affirm the district court's grant of summary judgment to the Air Force.

*AFFIRMED*

---

[7] We also reject Coleman's arguments that the Board failed to apply 38 C.F.R. §§ 4.3 and 4.7. Coleman failed to raise these arguments below, thereby waiving them, *see In re Under Seal*, 749 F.3d 276, 285–86 (4th Cir. 2014), and he cannot meet the high standard of fundamental-error review here.

17