Aristides GONZALEZ,
Plaintiff-Appellant,

v.

DEPARTMENT OF the ARMY, Clifford
L. Alexander, individually and in his ca-
pacity as Secretary of the Army, De-
fendants-Appellees.

No. 82–4270.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1983.

Decided Oct. 17, 1983.

Carlos Ernesto Duque, San Francisco,
Cal., for plaintiff-appellant.

Richard D. Rosen, Washington, D.C., for
defendants-appellees.

Before PECK,* FLETCHER, and PRE-
GERSON, Circuit Judges.

FLETCHER, Circuit Judge:

Appellant, an Army Major, appeals from
the district court's dismissal of his com-
plaint alleging race discrimination in viola-
tion of Title VII, 42 U.S.C. § 2000e et seq.
(1976 & Supp. V 1981), 42 U.S.C. § 1981
(1976), and 42 U.S.C. § 1983 (Supp. V 1981).
The district court dismissed the complaint
because it found appellant's claims nonjusti-
ciable and unreviewable, holding that Title
VII did not apply to uniformed members of
the Armed Forces, and that the section 1981

* The Honorable John W. Peck, Senior United
States Circuit Judge for the Sixth Circuit, sit-
ting by designation.

claim was barred by the doctrine of sovereign immunity. Appellant filed a timely appeal; this court's jurisdiction rests on 28 U.S.C. § 1291 (1976). We affirm the district court's judgment.

## I

### FACTS

Appellant, Aristides Gonzalez, is a native of Puerto Rico and a regular commissioned officer in the Army, holding the rank of Major. He entered on active duty in 1965 as a Second Lieutenant. He was promoted to First Lieutenant in 1966 and to Captain in 1967. From 1967 to 1980 appellant was several times considered for, but not promoted to, the rank of Major. During this period appellant alleges that he had outstanding ratings and would have been promoted but for the intentional race discrimination practiced by the Army.

In 1980, appellant was terminated from duty in the Army. At that time he began to pursue administrative remedies seeking a correction of his record and reinstatement. Through this process, several of his performance ratings were raised and he was granted reinstatement and a promotion to Major with a retroactive effective date of October 1, 1979.

Appellant contends that despite this retroactive promotion he is "at least four years behind his class-year contemporaries in the promotion process." He claims that this and other injuries were caused by the Army's intentional race discrimination. The discrimination that the Army practiced is alleged to consist of: (1) reliance on Officer Efficiency Ratings (OERs) that purport to measure the qualifications of eligible officers, but actually operate to discriminate against persons of appellant's race and national origin; (2) inadequate recruitment of minorities and failure to accept them on an equal and impartial basis; (3) reliance on arbitrary, non-job-related requirements for continued employment; and (4) other generalized complaints regarding Army recruitment and promotion programs.

Appellant filed this action against the Army in September, 1980. It was stayed pending the outcome of the Army administrative hearings which resulted in appellant's reinstatement. Following the conclusion of the administrative proceedings, the Army moved to dismiss appellant's complaint. The district court granted the motion to dismiss without giving appellant leave to amend.

## II

### DISCUSSION

*A. Appellant's Title VII Claim.*

■ The district court dismissed appellant's claim of race discrimination in employment under Title VII, 42 U.S.C. § 2000e–16(a) (Supp. V 1981) (provisions relating to federal employees), because it concluded that the statute did "not apply to members of the armed forces." Appellant contends on appeal that the district court's conclusion on this question of law is erroneous. We review this contention de novo. *See Turner v. Prod,* 707 F.2d 1109, 1114 (9th Cir.1983).

Section 717(a) of Title VII, 42 U.S.C. § 2000e–16(a), extends the protections against employment discrimination afforded by the Civil Rights Act of 1964 to "[a]ll personnel actions affecting employees or applicants for employment ... in military departments as defined in section 102 of Title 5 ...." The referenced statute provides that "[t]he military departments are: The Department of the Army[;] The Department of the Navy[; and] The Department of the Air Force." 5 U.S.C. § 102 (1982). Appellant argues that this statutory language is unambiguous and compels the conclusion that Title VII's coverage extends to both civilian employees and uniformed members of the Army, Navy, and Air Force.

■ We are not convinced that the language of section 717(a) is capable only of the construction appellant would give it; nor are we confident that appellant's construction of the statute is the one intended by Congress. The historical and revision

note to 5 U.S.C. § 102 states that the definition of military department appearing there "is supplied to avoid the necessity for defining 'military departments' each time it is used in [Title 5]." 5 U.S.C. § 102 note (1982). The note then cites section 101(7) of Title 10, which contains a definition of military departments substantially similar to that contained in section 102 of Title 5. *Compare* 10 U.S.C. § 101(7) (1976) *with* 5 U.S.C. § 102 (1982). Section 101 of Title 10, however, also contains a separate definition for "armed forces": " 'Armed Forces' means the Army, Navy, Air Force, Marine Corps, and Coast Guard." 10 U.S.C. § 101(4) (1976). The two differing definitions show that Congress intended a distinction between "military departments" and "armed forces," the former consisting of civilian employees, the latter of uniformed military personnel. *See, e.g.,* 10 U.S.C. § 3031(a)(6) & (7) (1976) (defining two separate categories of Army personnel, "civilians in the Department of the Army" and "members of the Army"). We conclude, therefore, that the term "military departments" in section 717(a) of Title VII, when read in the context of the statutory definitions to which it refers, can be fairly understood to include only civilian employees of the Army, Navy, and Air Force and not both civilian employees and enlisted personnel as appellant argues.[1]

Our reading of the statutory text is confirmed by the legislative history of section 717(a). This history is set forth in H.R.Rep. No. 238, 92d Cong., 1st Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 2137. The relevant parts of the report indicate that section 717 was primarily intended to improve the record of non-discrimination in federal employment by transferring to the Equal Employment Opportunity Commission (EEOC) much of the Title VII enforcement responsibility formerly vested in the Civil Service Commission. *Id.* at 22–26,

1972 U.S.Code Cong. & Ad.News at 2157–60. There is no indication in the legislative history that the former jurisdiction of the Civil Service Commission was to be expanded upon the transfer of functions to the EEOC. *Id.* Moreover, it is abundantly clear that the Civil Service Commission was never authorized to review or police discrimination within the armed forces. *See generally* S.Rep. No. 969, 95th Cong., 2d Sess. 2–13, *reprinted in* 1978 U.S.Code Cong. & Ad.News 723, 2724–35 (summary of Civil Service Reform Act of 1978 and need for reform). Thus the legislative history provides a strong inference that section 717 was not intended to extend Title VII coverage to enlisted and commissioned members of the armed forces in active service.

■ . This inference is consistent with the conclusion reached in those few cases to consider the question of whether section 717 makes Title VII applicable to uniformed military personnel. In the leading case of *Johnson v. Alexander,* 572 F.2d 1219 (8th Cir.1978), the Eighth Circuit stated:

There is no question that Congress intended for § 717(a) to afford protection against discrimination to civilian employees and applicants for civilian employment in the Departments of the Army, Navy, and Air Force. But we think that if Congress had intended for the statute to apply to the uniformed personnel of the various armed services it would have said so in unmistakable terms. We agree with the district court that neither Title VII nor its standards are applicable to persons who enlist or apply for enlistment in any of the armed forces of the United States.

*Id.* at 1224 (footnote omitted); *accord, Taylor v. Jones,* 653 F.2d 1193, 1200 (8th Cir. 1981); *Hunter v. Stetson,* 444 F.Supp. 238, 239 (E.D.N.Y.1979). In light of these cases, the legislative history, and the pertinent

---

1. We note too that Title 5, which contains the definition of "military departments" referred to by section 717(a) of Title VII, is captioned "Government Organization and Employees," while Title 10, which contains a similar definition of "military departments" plus a definition of "armed forces" is captioned "Armed Forces." The Title VII reference to Title 5, not Title 10, supports our view that the term "military departments" in section 717(a) of Title VII was intended to include only civilian employees of the Army, Navy, and Air Force.

statutory language, we hold section 717(a) does not make Title VII of the Civil Rights Act of 1964 applicable to uniformed members of the armed forces.[2] Accordingly, the district court's holding that appellant has no right of action under Title VII is affirmed.

### B. Appellant's Section 1981 Claim.

The district court dismissed appellant's claim of intentional race discrimination in violation of 42 U.S.C. § 1981 (1976), on the ground that the Army and the Secretary of the Army, as agents of the United States, were immune from suit. Without addressing the correctness of this ruling,[3] we affirm the district court's dismissal of appellant's section 1981 claim but on a different basis.

In *Chappell v. Wallace,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the Supreme Court remanded to this court a suit by a number of Navy enlisted men alleging race discrimination by their superior officers in order for us to determine whether the plaintiffs' claims for relief might be cognizable under 42 U.S.C. § 1985(3). *See id.* at 2368 n. 3.[4] Implicit in the court's order of remand is the recognition that, in some situations at least, uniformed members of the Armed Services may assert that their constitutional and statutory rights have been violated by their superiors. *See id.* at 2368. We need not decide in this case, however, whether appellant Gonzalez's claims against the Army of race discrimination in violation of section 1981 are cognizable because, even if we assume that he may assert his claims of discrimination under section 1981, the particular claims that appellant makes are nonreviewable. *See Wallace v. Chappell,* 661 F.2d 729, 732–33 (9th Cir.1981), *rev'd on other grounds,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).

In *Wallace v. Chappell,* we adopted, with some modification,[5] the approach outlined by the Fifth Circuit in *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971), to the question of whether a civilian court should review a serviceman's allegation of a deprivation of constitutional rights by the military. *See* 661 F.2d at 732–34. The *Mindes-Wallace* analysis requires two separate multi-factored inquiries. First,

> an internal military decision is unreviewable unless the plaintiff alleges (a) a violation of the Constitution, a federal statute, or military regulations; and (b) exhaustion of available intraservice remedies.

*Wallace,* 661 F.2d at 732; *Mindes,* 453 F.2d at 201. The Army essentially concedes that appellant has met these initial requirements. It argues, however, that review of appellant's challenge to the Army's promotion decisions in this case is precluded under the second part of the *Mindes-Wallace* analysis. This second phase consists of a weighing of four factors to determine whether review should be granted:

---

**2.** Our holding does not deprive uniformed members of the armed forces of a statutory remedy to correct racial discrimination in the military. *See* 10 U.S.C. § 1552 (1976 & Supp. V 1981); *Chappell v. Wallace,* —— U.S. ——, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983) (noting applicability of section 1552 to claims of race discrimination by enlisted men). Nor is section 1552 necessarily the exclusive statutory remedy for such discrimination. *See Chappell,* 103 S.Ct. at 2368 n. 3 (remanding for consideration of a claim of race discrimination by enlisted members of the armed forces under 42 U.S.C. § 1985(3) (1976)).

**3.** Although we find it unnecessary to address the district court's dismissal of appellant's section 1981 claim on immunity grounds, we note that our prior decision in *Bowers v. Campbell,* 505 F.2d 1155, 1158 (9th Cir.1974), suggests that the district court may have taken too broad a view in this case of the bar posed by the doctrine of sovereign immunity.

**4.** The court reversed our decision in *Wallace v. Chappell,* 661 F.2d 729 (9th Cir.1981), because it concluded that the plaintiffs, Navy enlisted men, had no right of action under the doctrine of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against their superior officers. 103 S.Ct. at 2367. The Court did not, however, address the servicemen's statutory claims. *Id.* at 2368 n. 3.

**5.** We limited our adoption of the *Mindes* analysis to "cases in which the plaintiff has alleged [a violation of] a 'recognized' constitutional right." 661 F.2d at 733–34 & n. 5.

(1) *The nature and strength of the plaintiff's claim . . . .* [C]onstitutional claims ordinarily carry greater weight than those resting on a statutory or regulatory base, but . . . within the class of constitutional claims, the nature and strength of the claim can vary widely.

(2) *The potential injury to the plaintiff if review is refused.*

(3) *The extent of interference with military functions . . . .* [I]nterference per se should not preclude review because some degree of interference will always exist.

(4) *The extent to which military discretion or expertise is involved.*

*Wallace,* 661 F.2d at 733; *see also Mindes,* 453 F.2d at 201–02.

■ After evaluating each of these factors, we conclude that the district court's decision not to hear appellant's claim under section 1981 should be affirmed. Even though appellant alleges "recognized" constitutional claims of the type that may be reviewed, *see Wallace,* 661 F.2d at 734, the other *Mindes-Wallace* factors strongly militate against reviewability. The second factor weighs against review, because the potential injury to appellant if review is denied is not substantial. He has already been reinstated by the Army with retroactive promotion to the rank of Major. He now seeks an earlier retroactive promotion date and guaranteed promotions in the future. Even if upon review these claims would have been upheld, the most that appellant would have gained is an earlier retroactive promotion date. As a result of the administrative action, he is eligible for promotions in the future and if these are discriminatorily denied, the decisions may be challenged through the appropriate administrative procedure. The third and fourth factors also counsel against review of appellant's claims. The interference with the Army if appellant's claims were reviewed would be significant. The officers who participated in reviewing appellant's performance would have to be examined to determine the grounds and motives for their ratings. Other evidence of appellant's performance would have to be gathered for the 10-year period in question. In short, the court would be required to scrutinize numerous personnel decisions by many individuals as they relate to appellant's claim that he was improperly denied promotion. This inquiry would involve the court in a very sensitive area of military expertise and discretion. While we would not shrink from such an assessment in a civilian setting, the same hesitation that precludes a *Bivens*-type claim in the military setting, *see Chappell v. Wallace,* 103 S.Ct. at 2364–67, compels restraint here. For these reasons, we hold that under the analysis described in *Wallace v. Chappell* and *Mindes v. Seaman,* review of appellant's section 1981 claim of discrimination in promotion must be denied.

Our assessment is consistent with the Supreme Court's decision in *Reaves v. Ainsworth,* 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225 (1911). There, a military officer sought review of a decision by the Army to discharge him without retirement pay. He claimed that the military board of examiners that made the decision in his case acted arbitrarily and deprived him of due process. The Court rejected his efforts to secure review of the discharge, stating that such a determination falls within the scope of the military tribunal's lawful powers and "cannot be viewed or set aside by the courts." *Id.* at 304, 31 S.Ct. at 233. As the Fifth Circuit observed in *Mindes* with regard to the decision in *Reaves*

The reason we discern for this refusal to review is that it would have entailed an analysis of the medical records and a determination of Reaves' fitness as an officer. *Clearly, the Court was unwilling to venture into this area of military expertise.*

453 F.2d at 200 (emphasis added). In like manner, we decline the invitation to engage in a review of appellant's fitness for promotion to higher levels of military authority or the timing of such promotions.

CONCLUSION

■ Because a Title VII suit is unavailable to appellant and because his claims un-

der 42 U.S.C. § 1981 are unreviewable, the judgment of the district court is

AFFIRMED.[6]

---

**6.** Appellant's complaint indicated an attempt to state a claim under 42 U.S.C. § 1983 (1976). Generally, however, section 1983 applies only to deprivations of civil rights under color of state law. *See Stonecipher v. Bray*, 653 F.2d 398, 401 (9th Cir.1981). There is no indication that state law is in any way involved in appellant's suit against the Army. We note this rule even though appellant does not press his section 1983 claim on appeal.