Archer FREY, Plaintiff–Appellant,

v.

STATE OF CALIFORNIA; State of California Military Department, Defendants–Appellees.

No. 91–16162.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 22, 1992.

Decided Jan. 5, 1993.

Leo F. Donahue, Gold River, CA, for plaintiff-appellant.

S. Michelle Inan, Deputy Atty. Gen., Oakland, CA, for defendants-appellees.

Before CANBY, REINHARDT, and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

Archer Frey appeals from the district court's dismissal of his action alleging that the California National Guard violated the

Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, by requiring him to separate from active duty on his sixtieth birthday pursuant to Section 167 of the California Military and Veterans' Code. Frey filed this action against the State of California and the State of California Military Department seeking, *inter alia,* a judicial declaration that section 167 violated the ADEA. In granting the state's motion to dismiss for failure to state a claim, Fed. R.Civ.P. 12(b)(6), the district court held that the military departments of the states, when taking actions affecting active duty officers of the state national guard, are not "employers" within the meaning of the ADEA.

### FACTS AND PROCEDURAL BACKGROUND

Archer Frey was a commissioned officer in the California National Guard on State Active Duty in the Office of the Adjutant General. He served in the State Guard from 1971 until 1991, when he was terminated under the authority of section 167, which contains a provision for mandatory retirement at age 60 for state active duty commissioned officers of the California National Guard who can no longer be called into active federal service.[1] Frey's retirement from active service at age sixty comports with the mandatory retirement age for reserve officers of the United States Army below the rank of major general. *See* 10 U.S.C. § 3843.

In 1985, because he had attained 30 years of commissioned service, Frey lost federal recognition, the effect being that he ceased to be a member of the National Guard of the United States (Army National Guard).[2] From 1985 until his mandatory retirement, Frey served only as a military officer in the California National Guard. *See* 32 U.S.C. § 323(a); Calif.Mil. & Vet. Code § 210. His job title during all relevant periods was Chief, Engineering Branch, and his rank at retirement was Colonel. Frey never served on active duty in the regular United States Army.

Frey's loss of federal recognition[3] meant he could no longer be called into active federal service. Notwithstanding the loss of federal recognition, as a member of the California National Guard on state active duty, Frey was subject to being called to duty 24 hours a day, seven days a week; he had no entitlement to compensatory time off; he was required to meet the same physical standards as prescribed for federally recognized National Guard members; and he wore a military uniform while on duty. Frey was exempt from the requirements of state civil service. *See* Cal.Const. art. VII, § 4(k). His pay and allowances were determined in accordance with those

---

1. Section 167(a) provides:
   All commissioned and warrant officers and enlisted personnel on permanent active duty with the Office of the Adjutant General shall be appointed by the Governor, with consideration of the recommendation of the Adjutant General and, except for the Adjutant General, the Assistant Adjutant General, and officers assigned to general officer positions, may remain on active duty with the office either until age 60 or until federal recognition of grade or rank as a member of the California National Guard is withdrawn, whichever occurs later.
   Cal.Mil. & Vet.Code § 167(a).

2. The National Guard of the several states and the National Guard of the United States are overlapping entities. As in Frey's case, one may be a member of the State National Guard, but not a member of the Army or Air National Guard of the United States. Thus, by statute, the term the "Army National Guard" is defined as follows:

[T]hat part of the organized militia of the several States ... that—(A) is a land force; (B) is trained, and has its officers appointed, under the sixteenth clause of section 8, article I, of the Constitution; (C) is organized, armed, and equipped wholly or partly at Federal expense; and (D) is federally recognized. 32 U.S.C. § 101(4); 10 U.S.C. § 101(10).

3. Federal recognition is the acknowledgment by the Federal Government that an officer [of the state militia] appointed, promoted, or transferred to an authorized grade or position vacancy in the Army National Guard meets the prescribed laws and regulation governing the action. National Guard Regulation 600–100, ¶ 1–3(b). The loss of federal recognition means that the officer no longer participates in federally-paid duty status, which includes activities such as drills, annual training, or service schools at any cost to the federal government, nor may he be called into active federal service.

of officers of the United States Army. *See* Cal.Mil. & Vet.Code §§ 320, 340. Discipline, if necessary, was determined according to the Federal Uniform Code of Military Justice, *see id.* at § 102, and he was subject to reassignment at will to any duty, or being called into active service in case of war, insurrection, rebellion, invasion, tumult, riot, breach of the peace, public calamity, catastrophe, or other emergency. *See id.* at §§ 142, 146.

Prior to his sixtieth birthday, the State informed Frey that it intended to discharge him at the end of April 1991, under the authority of section 167. In response, Frey filed this action alleging four claims and seeking, *inter alia*, a declaration that the ADEA applies to him and section 167 violates the ADEA. The complaint also alleged that section 167 directly conflicts with the provisions of the ADEA, thereby violating the Supremacy Clause of the United States Constitution. In addition, he sought damages for the alleged age discrimination and a preliminary injunction to restrain the State defendants from forcing him to retire pending the outcome of this action. The district court denied his request for preliminary injunctive relief, and Frey did not appeal from that denial.

The State then moved to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. In granting the State's motion, the district court held that the military departments of the states, when taking actions affecting uniformed active duty officers of the state national guard, are not included within the definition of "employer" as that term is defined under the ADEA, 29 U.S.C. § 630(b). The court went on to conclude that because this was a state employment action, taken under a state statute, it could not be preempted by federal law. Frey filed a timely appeal from the district court's dismissal.

**4.** Section 633a(a) provides:
All personnel actions affecting employees or applicants for employment who are at least 40 years of age ... in military departments as defined in section 102 of Title 5, in executive agencies ... in the United States Postal Service and the Postal Rate Commission, in those units in the government of the District of

### STANDARD OF REVIEW

■ We review *de novo* a dismissal for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6). *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

### DISCUSSION

Frey characterizes his status as that of a state employee, defined by 28 U.S.C. § 630(f), rather than that of federal military personnel. He asserts that because the ADEA applies to state employees, *see* 29 U.S.C. § 630(b), he is eligible to claim the protection of the ADEA. Frey argues that the clear language of section 630(f) evinces Congress' intent to capture, with few exceptions, all state employees, including Civil Service employees, within the provisions of the ADEA. *See* 29 U.S.C. § 630(f). Frey claims that the four statutory exceptions must be narrowly construed and do not apply to him. Additionally, Frey maintains that section 167 violates the Supremacy Clause of the United States Constitution as it is in direct conflict with the ADEA.

#### A. *Statutes*

Section 623(a) provides in relevant part that: "[i]t shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge any individual ... because of such individual's age...." 29 U.S.C. § 623(a). The term "employer" is ·defined by the ADEA to include "a State or political subdivision of a State." *Id.* at § 630(b). Similarly, section 633a extended the ADEA to protect federal employees as well.[4] Finally, section 630(f) of the ADEA defines the term "employee" as follows:

[A]n individual employed by any employer except that the term "employee" shall

Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination on the basis of age.

not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision. . . .

29 U.S.C. § 630(f). Although, in 1986, Congress amended the ADEA in order to exempt state firefighters and law enforcement officers from the Act, *see id.* at §§ 623(j), 630(j), (k), no such exemption was provided for state military personnel.

### B. *Merits*

■ Historically, our court has restricted its review of military decision making out of deference "to the special function of the military in our constitutional structure and in the system of national defense." *Sebra v. Neville*, 801 F.2d 1135, 1140–41 (9th Cir. 1986); *accord Gilliam v. Miller*, 973 F.2d 760, 762 (9th Cir.1992); *see also Gonzalez v. Department of Army*, 718 F.2d 926, 930 (9th Cir.1983) (court declining to enter into an area of military expertise even in the face of a claim of intentional race discrimination). Although the California statute at issue in this case is not a traditional "military decision" similar principles apply when Congress or the states take actions affecting the militia.

Article I, section 8 of the United States Constitution explicitly grants Congress plenary authority over the military. *See* U.S. Const. art. I, § 8, cl. 12–16 (the "Militia Clauses"). One provision in the Militia Clauses confers upon Congress the power "[t]o provide for organizing, arming, and disciplining the Militia, and for governing such Part of them as may be employed in the Service of the United States." *Id.* at cl. 16. That provision, however, reserves to the states "the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress." *Id.* The statutes and regulations governing the National Guard recognize the constitutional source of the states' power and refrain from intruding on it unnecessarily. *See* 32 U.S.C. § 324(b) ("the appointment of an officer of the National Guard may be terminated or vacated as provided by the laws of the State or Territory of whose National Guard he is a member"); 32 U.S.C.App. § 1101.5 ("The termination of the appointment of a commissioned officer of the National Guard is a function of the State authorities"); 32 U.S.C.App. § 1101.2(a)(1) ("Article 1, section 8, Clause 16, of the Constitution of the United States reserves to the States the appointment of officers in the militia"). Here, the state legislature, by way of Cal. Mil. & Vet.Code § 167, adopted a mandatory retirement provision that simply parallels the mandatory retirement age for reserve officers of the U.S. Army imposed by Congress. *See* 10 U.S.C. § 3843. Thus, the state statute at issue here involves a scope of activity—the appointment of state military officers—in which the states have traditionally exercised considerable power, both constitutional and statutory.

■ Indeed, the Supreme Court has repeatedly emphasized the special status of the military in our judicial system. *See, e.g., Chappell v. Wallace*, 462 U.S. 296, 301, 303, 103 S.Ct. 2362, 2366, 2367, 76 L.Ed.2d 586 (1983). "The special status of the military has required, the Constitution has contemplated, Congress has created, and this Court has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel." *Id.* at 303–04, 103 S.Ct. at 2367–68. In the absence of clear Congressional intent, the courts must not readily interpret statutory language of general application to include the military. *See Gonzalez*, 718 F.2d at 928 (" 'If Congress had intended for [Title VII] to apply to the uniformed personnel of the various armed services it would have said so in unmistakable terms.' " (citations omitted)); *see also Kawitt v. United States*, 842 F.2d 951, 954 (7th Cir.1988) ("[J]udges should be reluctant to assume the micromanagement of

military age-grading policies, and without a clearer directive from Congress we decline to do so.").

Our circuit was confronted initially with whether protections provided by Title VII, 42 U.S.C. § 2000e–16(a) (Supp. V 1981) (provisions relating to federal employees), were extended to uniformed members of the Armed Forces. *Gonzalez,* 718 F.2d at 927. The plaintiff, a commissioned officer in the Army, brought an action under Title VII, alleging that he would have been promoted but for the intentional race discrimination practiced by the Army.

Section 717(a) of Title VII, applies to "[a]ll personnel actions affecting employees ... in military departments as defined in section 102 of Title 5." 42 U.S.C. § 2000e–16(a). *See also Gonzalez,* 718 F.2d at 927. The note following 5 U.S.C. § 102 states that military department was defined in that section in order to avoid the necessity for defining "military departments" each time it was used in Title 5. 5 U.S.C. § 102 note (1982). The note then cites section 101(7) of Title 10, which also contains a definition of military departments. *Id.*

We undertook a comparison of the definition of the term "military department" as provided by section 102 of Title 5, with that of section 101(7) of Title 10, Armed Forces. *Gonzalez,* 718 F.2d at 927–28. Although the two definitions of the term "military departments" are similar, section 101 of Title 10 contains a separate definition for "armed forces." 10 U.S.C. § 101(4); *Gonzalez,* 718 F.2d at 928. We reasoned that the two differing definitions indicated that Congress intended a distinction between "military departments" and "armed forces," the former consisting of civilian employees, and the latter of uniformed military personnel. *Id.* Consequently, we held that section 717(a) did not make Title VII applicable to uniformed members of the armed forces. *Id.* at 929. *See also Stinson v. Hornsby,* 821 F.2d 1537, 1539–40 (11th Cir.1987) (The court characterized a member of the Alabama National Guard as "military personnel", which rendered Title VII inapplicable.), *cert. denied,* 488 U.S.

959, 109 S.Ct. 402, 102 L.Ed.2d 390 (1988); *Taylor v. Jones,* 653 F.2d 1193, 1200 (8th Cir.1981) (The court declared Title VII inapplicable to persons enlisted in the Armed Forces of the United States, including the National Guard.).

In *Helm v. California,* 722 F.2d 507, 509 (9th Cir.1983), the plaintiff was a federally recognized officer in the California National Guard. Due to his federal recognition, he was also a member of the Army National Guard. Claiming that he was wrongfully denied a promotion, the plaintiff sued the state and federal national guards under the ADEA. Section 633a of the ADEA, applicable to federal agencies, uses language identical to that in Title VII; namely, discrimination against "employees ... in military departments as defined in § 102 of Title 5" is prohibited. 29 U.S.C. § 633a(a); 42 U.S.C. § 2000e–16(a). Relying on *Gonzalez,* we held that the ADEA does not apply to federally recognized military reservists. *Helm,* 722 F.2d at 509; *accord Kawitt,* 842 F.2d at 953–54; *see also Costner v. Oklahoma Army National Guard,* 833 F.2d 905, 907–08 (10th Cir. 1987) (Plaintiff's age discrimination claim against the state national guard was nonreviewable, notwithstanding the fact that plaintiff was both a civilian employee and a member of the guard.).

While *Gonzalez* and *Helm* are instructive, they are not dispositive of this case because the loss of federal recognition by Frey, resulted in his removal from "that part of the organized militia of the [State of California]" which constitutes the National Guard of the United States. *See* 10 U.S.C. § 101(10). The plaintiffs in *Gonzalez* and *Helm* clearly fell within the definition of "armed forces." *See* 10 U.S.C. § 101(4). Armed forces is defined to include the Army, *id.,* and the Army is defined to include the Army National Guard. *See* 10 U.S.C. § 3062(c)(1).

Frey's loss of federal recognition meant he could no longer be called into active federal service. Nevertheless, as a member of the California National Guard on state active duty, Frey was subject to nearly all of the same discipline and working

conditions as members of the federally recognized Guard.

Our court's holdings in *Gonzalez* and *Helm,* as well as decisions by other circuits—*Kawitt, Stinson, Taylor,* and *Costner,* do, however, demonstrate a consistent judicial interpretation that Congress did not intend to extend the protections of Title VII or the ADEA to members of the state National Guard. The courts have held that these Acts do not apply to the military primarily because of a determination that, if Congress had intended to encroach upon the special status of the military in our system by extending these protections, it would have expressed its intention clearly.

■ The policy considerations that preclude us from applying the ADEA to the federal military in the absence of a clear congressional directive similarly preclude the application of the ADEA to the state militias based solely upon the loss of federal recognition, when Congress has not expressly so directed. As the district court recognized:

> It is most unlikely that Congress intended to permit the federal military to discharge plaintiff because of his age, but to prohibit state military officials from acting in accordance simply because plaintiff had lost federal recognition.... The deference and restraint the courts apply to military questions is just as appropriate to the state militia as to the Army National Guard.

■ Under these circumstances, Frey's loss of federal recognition alone cannot justify this court according less deference to the state militia than to the National Guard of the United States. There is no indication from Congress, either in the ADEA or its legislative history, to suggest that the Act should apply to the state military departments. Due to the special status of the military, we hold that Congress' failure to expressly include the states' military departments within the definition of employer demonstrates an intent to exclude the military departments of the states from the ADEA. The judgment of the district court is affirmed.

AFFIRMED.