[No. C043878. Third Dist. July 28, 2004.]

JAMES ESTES, Plaintiff and Appellant, v.
PAUL D. MONROE et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Seth M. Goldberg and Seth M. Goldberg for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Jacob Appelsmith, Assistant Attorney General, Vincent J. Scally, Jr., and Richard L. Manford, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**RAYE, Acting P. J.**—The California National Guard terminated a state active duty guardsman after he was paralyzed in an automobile accident. The guardsman, plaintiff Major James Estes, brought a wrongful termination claim against defendant California Military Department, alleging his discharge violated the public policy of the state to provide reasonable accommodation to disabled workers. (Gov. Code, § 12960.) Concluding that the case was not justiciable, the trial court granted the military's demurrer without leave to amend. We affirm, based not on justiciability but on a deferential analysis of the pertinent statutes as required by the *Feres* doctrine. (*Feres v. United States* (1950) 340 U.S. 135 [95 L.Ed. 152, 71 S.Ct. 153] (*Feres*).)

## FACTS

We take the facts, as we must, from the allegations in plaintiff's complaint. The pertinent facts can be simply stated. Plaintiff joined the National Guard in 1988 and was commissioned as an officer in 1989. He held both a federal commission and a commission from the State of California. In 2000 plaintiff accepted a state active duty position with the California Army National Guard as the assistant commandant at Turning Point Academy, a military school for juvenile delinquents in San Luis Obispo. While on state active duty status, plaintiff was a full-time employee of the State of California.

Returning to the academy from Sacramento, plaintiff was involved in a single vehicle rollover accident. As a result, he was partially paralyzed and is confined to a wheelchair. His doctors released him to return to work in July 2001 with minimal accommodation. Believing the state would accommodate his disability, he began working from his home in Sacramento. He requested a transfer to the retired reserve to allow him to retain his state commission and to keep his state active duty status.

Defendant Major General Paul D. Monroe terminated plaintiff, however, from the state active duty program without attempting to provide any accommodation. Plaintiff alleges he was wrongfully terminated because he is disabled.

Plaintiff remains in hope of alleging many additional facts relevant to the structure of the National Guard and his individual duties. In essence, he claims he is no longer subject to service in the federal forces, the Military Department is organized under the State of California, his duties at the academy are not combat related nor are soldiers assigned to the academy qualified to be deployed, and he is entitled to many state benefits. Because he had requested a transfer to the State Military Reserve, plaintiff alleges that individuals assigned to the State Military Reserve are usually retired and are not deployable.

## DISCUSSION

## I

### Scope of Appeal

Plaintiff's complaint alleges causes of action for wrongful termination, intentional infliction of emotional distress, and breach of contract. His fourth cause of action, for "injunctive relief," vaguely asserts that defendants subject plaintiff and others on state active duty "to varying degrees of scrutiny and

analysis dependant [*sic*] upon whether or not they are liked . . . ." We need not attempt to decipher the meaning of this cause of action or to consider whether plaintiff has stated a cause of action for emotional distress or breach of contract. As the Attorney General properly points out, plaintiff has waived his appeal as to the latter three causes of action by failing to brief, argue, or discuss the second, third, or fourth causes of action. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546 [35 Cal.Rptr.2d 574].)

In reply, plaintiff suggests that an appellate court has the discretion to reject a waiver claim. But again, he offers no argument as to the viability of the three causes of action. We therefore consider his appeal waived as to all but the first cause of action. Before us remains the viability of a sole tort claim for damages for wrongful termination. Plaintiff raises no constitutional challenge to the military decision to discharge him.

## II

### The *Feres* Doctrine

In *Feres*, *supra*, 340 U.S. 135, the Supreme Court held that members of the armed forces may not bring tort lawsuits under the Federal Tort Claims Act (Tort Claims Act; 28 U.S.C. § 2671 et seq.) for physical injuries that "arise out of or are in the course of activity incident to service." (*Feres*, *supra*, 340 U.S. at p. 146.) The rationale of *Feres* has been used to construe a wide variety of statutory and constitutional claims, and as the Attorney General observes, it has been referred to as the "*Feres* doctrine." But the Attorney General equates the *Feres* doctrine with a wholesale grant of intramilitary immunity to the Armed Services and a corollary principle that claims by military personnel are nonjusticiable. *Feres*, however, does not rest on principles of justiciability or immunity. We reject the Attorney General's broad characterization of the *Feres* doctrine and the analytic framework he proposes to evaluate the viability of plaintiff's tort claim.

*Feres* has been expanded, distinguished, explained, rationalized, and criticized for over 50 years. We see no reason to reiterate once again the scathing criticism lodged by state and federal courts throughout the country and by members of the Supreme Court itself. (See, e.g., *United States v. Johnson* (1987) 481 U.S. 681, 694–698 [95 L.Ed.2d 648, 107 S.Ct. 2063] (dis. opn. of Scalia, J.); *Day v. Massachusetts Air Nat. Guard* (1st Cir. 1999) 167 F.3d 678; *Taber v. Maine* (2d Cir. 1995) 67 F.3d 1029; *Miller v. United States* (5th Cir. 1995) 42 F.3d 297; *Nyberg v. State Military Dept.* (2003) 2003 Wyo. 43 [65 P.3d 1241]; *Estate of Himsel v. State* (Alaska 2001) 36 P.3d 35.) Despite the ongoing

and acrimonious debate over the validity of the justifications proferred by the court a half century ago, *Feres* survives. (*Costo v. United States* (9th Cir. 2001) 248 F.3d 863.) Although we will not add our voices to the cacophony, we will apply *Feres*, as we must, to the statute before us.

Indeed, *Feres* involves statutory construction. "The only issue of law raised is whether the Tort Claims Act extends its remedy to one sustaining 'incident to the service' what under other circumstances would be an actionable wrong." (*Feres*, *supra*, 340 U.S. at p. 138.) The court acknowledged that there were "few guiding materials for our task of statutory construction." (*Ibid.*) Turning first to the language of the Tort Claims Act, the court found persuasive evidence to sustain a finding of liability. "The Act does confer district court jurisdiction generally over claims for money damages against the United States founded on negligence. 28 U.S.C. § 1346 (b). It does contemplate that the Government will sometimes respond for negligence of military personnel, for it defines 'employee of the Government' to include 'members of the military or naval forces of the United States,' and provides that ' "acting within the scope of his office or employment," in the case of a member of the military or naval forces of the United States, means acting in line of duty.' 28 U.S.C. § 2671." (*Feres*, *supra*, 340 U.S. at p. 138.)

The court also pointed out that the express exceptions to the Tort Claims Act suggest that military claims are included within the act's ambit. "28 U.S.C. § 2680 (j) excepts 'any claim arising out of the *combatant* activities of the military or naval forces, or the Coast Guard, *during time of war*' (italics supplied [by *Feres* court]), from which it is said we should infer allowance of claims arising from noncombat activities in peace. Section 2680 (k) excludes 'any claim arising in a foreign country.' " (*Feres*, *supra*, 340 U.S. at p. 138.) In an argument that resonates with the arguments raised by plaintiff here, the court stated: "These considerations, it is said, should persuade us to cast upon Congress, as author of the confusion, the task of qualifying and clarifying its language if the liability here asserted should prove so depleting of the public treasury as the Government fears." (*Id.* at p. 139.)

Although the language of the Tort Claims Act would suggest, both expressly and impliedly, that tort claims by members of the Armed Forces against the government would be cognizable, the court construed the language to fit "into the entire statutory system of remedies against the Government to make a workable, consistent and equitable whole." (*Feres*, *supra*, 340 U.S. at p. 139.) The Tort Claims Act, the court explained, marked "the culmination of a long effort to mitigate unjust consequences of sovereign immunity from suit" (*ibid.*) and "to extend a remedy to those who had been without . . ." (*id.* at p. 140).

In this context, the Tort Claims Act prescribes the test of allowable claims, which is, "The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . ." (28 U.S.C. § 2674; *Feres, supra,* 340 U.S. at p. 141.) The court concluded that there was no liability of a "private individual" even remotely analogous or any "like circumstances" in that no law had ever permitted a soldier to recover for negligence. Hence, the court rejected the notion that Congress intended to extend the remedies of the Tort Claims Act to servicemen "where the injuries arise out of or are in the course of activity incident to service. Without exception, the relationship of military personnel to the Government has been governed exclusively by federal law. We do not think that Congress, in drafting this Act, created a new cause of action dependent on local law for service-connected injuries or death due to negligence. We cannot impute to Congress such a radical departure from established law in the absence of express congressional command." (*Feres, supra,* 340 U.S. at p. 146.)

The dispositive issue, therefore, in *Feres* was not whether the claim was justiciable but whether the Tort Claims Act provided members of the Armed Services a tort remedy for the negligence suffered "incident to service."

■ It is true that several federal courts have characterized the threshold question in military disputes as one of justiciability. But in most of these cases, the federal district court had dismissed the action for lack of subject matter jurisdiction and the circuit court stated that the issue involved an array of policy considerations under the general rubric of "justiciability" rather than jurisdiction. (*Wilkins v. U.S.* (9th Cir. 2002) 279 F.3d 782; *Bledsoe v. Webb* (9th Cir. 1988) 839 F.2d 1357; *Sebra v. Neville* (9th Cir. 1986) 801 F.2d 1135; *Khalsa v. Weinberger* (9th Cir. 1985) 779 F.2d 1393.) Where, as here, there is no challenge to the court's jurisdiction, *Feres* quite simply offers a template for construing a general statute as applied to active duty members of the military.

■ Nor does the *Feres* doctrine create "intramilitary" immunity. In *United States v. Stanley* (1987) 483 U.S. 669 [97 L.Ed.2d 550, 107 S.Ct. 3054] (*Stanley*), the majority noted that the Constitution did not contain a grant of immunity to military personnel and explained "[t]here is no more reason why court-created rules of immunity (as opposed to immunity specifically prescribed in the Constitution) should be held *a priori* to describe the limit of those concerns here than in any other field." (*Id.* at p. 685.) In *Feres, Chappell v. Wallace* (1983) 462 U.S. 296 [76 L.Ed.2d 586, 103 S.Ct. 2362] (*Chappell*), and *Stanley,* the Supreme Court exercised deference and restraint with regard to military matters, but it did not thereby

immunize the military from liability. Although, as the Attorney General suggests, some federal courts have referred to a "doctrine of intramilitary immunity" (see, e.g., *Hodge v. Dalton* (9th Cir. 1997) 107 F.3d 705, 710 (*Hodge*)), we will follow the Supreme Court's admonition in *Stanley* to subscribe to the more analytically sound premise of *Feres*.

## III

### Analysis of a Wrongful Termination Claim by a National Guardsman in Violation of the FEHA Under the *Feres* Doctrine

#### A. *A Tort Claim Utilizing the FEHA*

■ Plaintiff does not attempt to state a cause of action under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). Rather, he alleges that his discharge was wrongful because it violated the public policy embodied in the FEHA by failing to offer him reasonable accommodation for his disability. Indeed the "FEHA is a comprehensive scheme for the realization of the state's public policy 'to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . physical handicap . . . .' ([Gov. Code,] § 12920.)" (*State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 428 [217 Cal.Rptr. 16, 703 P.2d 354]; *Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 266–267 [121 Cal.Rptr.2d 203, 47 P.3d 1069] (*Esberg*).) "FEHA's provisions prohibiting discrimination may provide the policy basis for a claim for wrongful discharge in violation of public policy." (*Phillips v. St. Mary Regional Medical Center* (2002) 96 Cal.App.4th 218, 227 [116 Cal.Rptr.2d 770] (*Phillips*); *Reno v. Baird* (1998) 18 Cal.4th 640, 663 [76 Cal.Rptr.2d 499, 957 P.2d 1333] (*Reno*).) But the tort claim based on a violation of the FEHA is limited by the terms of the statute. (*Esberg, supra*, 28 Cal.4th at p. 272; *Phillips, supra*, 96 Cal.App.4th at p. 230.) In other words, the viability of plaintiff's tort claim is tethered to the meaning of the FEHA. We turn to analogous federal precedent.

#### B. *Construing Federal Antidiscrimination Statutes*

*Feres's* deferential approach to determining whether military personnel can state damage claims has been utilized to construe the availability of remedies under a wide assortment of federal statutes. " 'Because the antidiscrimination objectives and relevant wording of title VII of the Civil Rights Act of 1964 (Title VII) [(42 U.S.C. § 2000e et seq.)], the Age Discrimination in

Employment Act (ADEA) [(29 U.S.C. § 621 et seq.)], and the Americans with Disabilities Act (ADA) [(42 U.S.C. § 12111 et seq.)] are similar to those of the FEHA, California courts often look to federal decisions interpreting these statutes for assistance in interpreting the FEHA. [Citations.]' " (*Reno, supra,* 18 Cal.4th at pp. 647–648.)

Section 717 of Title VII extends protections against employment discrimination to "[a]ll personnel actions affecting employees or applicants for employment . . . in military departments . . . ." (42 U.S.C. § 2000e-16(a).) The Army is a military department under the pertinent statute. In *Gonzalez v. Department of Army* (9th Cir. 1983) 718 F.2d 926 (*Gonzalez*), a major in the Army filed an action against the Army for racial discrimination under Title VII, contending that the unambiguous statutory language extends Title VII's coverage to both civilian employees and uniformed members of the Army, Navy, and Air Force. The Ninth Circuit Court of Appeals rejected the major's claim.

The court concluded, contrary to the plaintiff's interpretation of the statute, that the definition of "military department" includes only civilian employees of the Army, Navy, and Air Force. Moreover, "the legislative history provides a strong inference that section 717 was not intended to extend Title VII coverage to enlisted and commissioned members of the armed forces in active service." (*Gonzalez, supra,* 718 F.2d at p. 928; *Fisher v. Peters* (6th Cir. 2001) 249 F.3d 433, 438–439 (*Fisher*).) Active duty uniformed members of the military simply have no recourse under Title VII for employment discrimination. (*Hodge, supra,* 107 F.3d at pp. 708–709.) Nor, according to the court in *Mier v. Owens* (9th Cir. 1995) 57 F.3d 747 (*Mier*), does Title VII encompass National Guard technicians when the personnel actions are "integrally related to the military's structure." (*Mier, supra,* 57 F.3d at p. 751.) Civilians employed by the National Guard, on the other hand, may be able to state a Title VII claim. (*Meister v. Texas Adjt. General's Dept.* (5th Cir. 2000) 233 F.3d 332, 338 (*Meister*).)

Similarly, the federal courts have found that the ADEA does not apply to members of the Armed Forces. (*Helm v. State of Cal.* (9th Cir. 1983) 722 F.2d 507, 509 (*Helm*).) In *Frey v. State of Cal.* (9th Cir. 1993) 982 F.2d 399 (*Frey*), a case remarkably similar to that now before us, a commissioned officer in the California National Guard on state active duty was terminated on his 60th birthday pursuant to section 167 of the California Military and Veterans Code. Six years earlier he had lost federal recognition; consequently, he ceased to be a member of the Army National Guard of the United States and

could no longer be called into active federal service. He alleged that the California National Guard violated the ADEA by terminating him pursuant to section 167.

Under the ADEA, "[i]t shall be unlawful for an employer—[¶] (1) to fail or refuse to hire or to discharge any individual . . . because of such individual's age[.]" (29 U.S.C. § 623(a).) An employer is defined by the ADEA to include "a State or political subdivision of a State[.]" (*Id.,* § 630(b).) Employees include those who serve in military departments. Firefighters and law enforcement officers are expressly exempt from the ADEA, but there is no exemption for state military personnel. (*Id.,* §§ 623(j), 630(f).)

As in *Feres*, the inclusive language of the statute suggested that military personnel could state a claim under the ADEA, particularly since they, unlike firefighters and law enforcement officers, were not expressly exempt. The court in *Frey* recognized that similar principles of construction apply when the states take actions affecting the militia even though "the state statute at issue here involves a scope of activity—the appointment of state military officers—in which the states have traditionally exercised considerable power, both constitutional and statutory." (*Frey, supra*, 982 F.2d at p. 402.)

Nevertheless, the court emphasized the special status of the military in our judicial system. "In the absence of clear Congressional intent, the courts must not readily interpret statutory language of general application to include the military." (*Frey, supra*, 982 F.2d at p. 402.) In *Frey*, unlike *Gonzalez* and *Helm*, the plaintiff had lost his federal recognition, yet as a member of the California National Guard on state active duty, he remained subject to nearly all of the same discipline and working conditions as members of the federally recognized National Guard.

The court concluded: "Under these circumstances, Frey's loss of federal recognition alone cannot justify this court according less deference to the state militia than to the National Guard of the United States. There is no indication from Congress, either in the ADEA or its legislative history, to suggest that the Act should apply to the state military departments. Due to the special status of the military, we hold that Congress' failure to expressly include the states' military departments within the definition of employer demonstrates an intent to exclude the military departments of the states from the ADEA." (*Frey, supra*, 982 F.2d at p. 404.)

C. *Can a National Guardsman on State Active Duty State a Tort Claim for Wrongful Discharge Utilizing the FEHA?*

■ Pursuant to the power conferred to it by article I, section 8 of the United States Constitution (the "militia clauses"), Congress created an "organized militia" to be known as the National Guard of the several states with a dual enlistment system under which an individual enlisted in a state National Guard unit simultaneously enlists in the National Guard of the United States. (*Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 310 [109 Cal.Rptr.2d 154] (*Holmes*).) "It is axiomatic that the National Guard is military in character." (*Wright v. Park* (1st Cir. 1993) 5 F.3d 586, 588 (*Wright*).) Moreover, the role of guard technicians is "irreducibly military in nature." (*Ibid.*; *Fisher, supra*, 249 F.3d at p. 439.)[1] As a consequence, we must exercise the same deference and restraint in construing the language of the FEHA as the federal courts have exercised in construing statutory language of general application to members of the military.

■ The public policy incorporated into the FEHA is as broadly stated as the policies set forth in *Feres*, *Gonzalez*, and *Frey*. Government Code section 12920 encapsulates the FEHA's general policy against employment discrimination: "It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation." Government Code section 12940, like the analogous provisions in Title VII and the ADEA, prohibits an employer from discriminating in the "terms, conditions, or privileges of employment." (*Esberg, supra*, 28 Cal.4th at p. 267.)

Moreover, the FEHA's description of an employer mimics the ADEA. Government Code section 12926, subdivision (d) defines an employer as follows: " 'Employer' includes any person regularly employing five or more

---

[1] "[A]s presently constituted, the National Guard consists of ' "two overlapping, but legally distinct, organizations . . ." '—the federal, or United States National Guard, and the separate National Guards of the various individual states. [Citation.] In their capacity as members of the National Guard of the United States, individual members of the National Guard are part of the enlisted Reserve Corps of the Armed Forces of the United States. However, unless and until ordered to active duty in the Army, such individuals retain their status as members of separate state National Guard units. If and when ordered into active duty in the federal military service, members of the National Guard thereby lose their status in their respective state National Guards for the duration of their period of active federal military service. During their time of *federal* active duty, their state affiliation is suspended in favor of an entirely federal affiliation, and they are subject to all applicable laws and regulations of the United States military. Upon being relieved from federal active duty, such individuals then revert to their *state* National Guard status and duty." (*Holmes, supra*, 90 Cal.App.4th at p. 310.)

persons, or any person acting as an agent of an employer, directly or indirectly, the state or any political or civil subdivision of the state, and cities . . . ." While the FEHA expressly exempts religious organizations and nonprofit organizations in the same way the ADEA exempts firefighters and law enforcement officers, it does not exempt military personnel. In plaintiff's view, California's strong public policy against employment discrimination must prevail over the deference and restraint demanded by *Feres* and its progeny. We disagree for the same reasons articulated by the federal courts in rejecting Title VII (*Wright, supra,* 5 F.3d at p. 591), ADEA (*Frey, supra,* 982 F.2d at p. 404), Rehabilitation Act of 1973 (29 U.S.C. §§ 791, 794, 794a) (*Doe v. Garrett* (11th Cir. 1990) 903 F.2d 1455, 1461–1462), and title 42 United States Code section 1983 claims by military personnel.

The federal courts have rejected claims when the personnel actions are "integrally related to the military's unique structure" (*Mier, supra,* 57 F.3d at p. 750), when civilian and military duties are "inextricably intertwined" and "irreducibly military in nature" (*Wright, supra,* 5 F.3d at pp. 588, 589), or when more generally the challenged conduct was "incident to service" (*Feres, supra,* 340 U.S. at p. 146). Whatever the precise formulation, the courts are loath to interfere with military decision making and thereby compromise the combat readiness of the military. The Supreme Court reiterated the importance of the special status of the military in *Chappell, supra,* 462 U.S. 296: "The special status of the military has required, the Constitution has contemplated, Congress has created, and this Court has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel. [Citation.] The special nature of military life—the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel—would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command. Here, as in Feres, we must be 'concern[ed] with the disruption of "[t]he peculiar and special relationship of the soldier to his superiors" that might result if the soldier were allowed to hale his superiors into court[.]' " (*Id.* at pp. 303–304.)

These concerns are no less pertinent to the California National Guard. The Attorney General argues persuasively that the National Guard, like the other branches of the service, "consist[s], by necessity, of able-bodied service members, physically able to respond to any kind of emergency. Nothing but chaos in their mission would be created by lawyers suing and conducting discovery, and judges and juries second-guessing, based on the Americans with Disabilities Act and the FEHA, which physically disabled service members should and should not be retained in the armed forces for which positions, and what kinds of 'reasonable' accommodations they should receive."

We agree with the Attorney General insofar as he contends that plaintiff's military status is relevant to our interpretation of the FEHA. Under the *Feres* doctrine, we must be careful not to create a remedy for soldiers, including National Guard members, that the Legislature did not intend to provide. Like our brethren on the federal bench, we will not attribute an intent to the Legislature to include military personnel absent clear evidence that the Legislature specifically intended to extend FEHA protection to National Guard members on state active duty, particularly when allowing such claims would be at odds with the federal decisions construing analogous antidiscrimination legislation.

We hold, therefore, that the Legislature did not express the requisite intent to extend the FEHA to cover claims by those on active duty when the challenged personnel actions are incident to service. Since the California National Guard terminated plaintiff based on his physical disability without providing reasonable accommodation, the decision was clearly "incident to service" and directly affected the peculiar and special relationship between soldiers and their superiors. Certainly the Legislature has the prerogative to subject the California National Guard to the same obligation to provide reasonable accommodation for disabled guard members as other California employers, but employing the *Feres* rationale, we conclude the Legislature will have to explicitly extend a FEHA remedy to military personnel to overcome a judicial predisposition to defer to military wisdom. Hence, in the absence of express statutory language extending the FEHA to military personnel, we must reject plaintiff's claim as a matter of law.

## IV

### Leave to Amend

Plaintiff urges us to give him the opportunity to amend his complaint to avoid *Feres*. He emphasizes that his duties as an administrator at Turning Point Academy are not military in nature, and that if he were allowed to transfer into the State Military Reserve, he could not be called up for federal active duty. As a consequence, he maintains that the concerns articulated in *Feres* and its progeny do not apply to a civil servant who, as a state employee, is entitled to various state benefits and is not suing for wrongs "incident to military service." Most significantly, according to plaintiff, his responsibilities are not related to combat.

Plaintiff relies on cases in which military personnel could state claims because the personnel actions at issue were "not integrally related to the military's personnel structure." (*Mier, supra,* 57 F.3d 747; *Bledsoe, supra,* 839 F.2d 1357; *Lutz v. Secretary of the Air Force* (9th Cir. 1991) 944 F.2d 1477 (*Lutz*); *Meister, supra,* 233 F.3d 332.) Plaintiff's cases are distinguishable.

In *Meister* and *Bledsoe*, the plaintiffs performed exclusively civilian assignments. "[T]he plain language of Title VII allows civilian employees of state National Guard units to bring suit against their employers." (*Meister, supra*, 233 F.3d at p. 335.) Neither Meister nor Bledsoe was subject to military discipline or the military hierarchy.

Plaintiff, by contrast, was a commissioned officer on state active duty. He does not allege that he was not subject to military discipline or to the military hierarchy. Nor does he propose to amend his complaint to allege that he was a civilian. Rather, he contends that his administrative duties rendered him a "civil servant" with greater rights under the FEHA than his military comrades. We agree with the Attorney General that plaintiff's military status as an active duty uniformed officer, and not his specific duties at the time of the injury, is determinative.

"Applicability of *Feres*'s incident-to-service test depends upon the relationship between the plaintiff and the government. The Court made that clear in *Feres*, and subsequent decisions, especially *Chappell*, have explained why this relationship is critical—courts should not interfere with military discipline and management. These are areas where we have little competence or authority to proceed. . . . Military discipline is equally important in the state national guards. The same is also true with respect to the unique role of national guard technicians." (*Meister, supra*, 233 F.3d at p. 338.)

It is true that there are many hybrid positions with the National Guard in which a technician performs both military and civilian duties. Personnel actions regarding the execution of civilian duties are not always "integrally related to the military's unique structure" (*Mier, supra*, 57 F.3d at p. 750), although even civilian duties may be "inextricably intertwined" with the military (*Wright, supra*, 5 F.3d at p. 589). In *Mier*, the Ninth Circuit Court of Appeals held that a National Guard technician could not state a Title VII claim for failing to promote him because "[m]ilitary promotion is one of the most obvious examples of a personnel action that is integrally related to the military's structure. Decisions regarding who is promoted and why are central to maintenance of the military's hierarchy." (*Mier, supra*, 57 F.3d at p. 751.)

■ Similarly, decisions regarding fitness to serve in the military are integrally related to the military's unique mission. The challenged personnel action, that is, the California National Guard's decision to terminate plaintiff following his paralysis without providing reasonable accommodation, falls within the ambit of decisions that bear directly on the essential functions of

the military to respond to threats by both nature and man. We reject plaintiff's notion that courts are equipped to second-guess decisions requiring military expertise or have the prerogative to determine what type of accommodation is reasonable within the military structure. Moreover, "a central purpose of the *Feres* doctrine is not only to avoid liability, but also to preclude a trial on the merits because the judicial inquiry itself, rather than just a merits judgment, causes the disruption of military affairs the *Feres* doctrine is designed to prevent." (*Lutz, supra*, 944 F.2d at p. 1481.)

Nor does *Lutz* suggest a different result. In that case, the challenged conduct, unlike plaintiff's termination, was unrelated to military decision making. Several servicemen, determined to ruin a major's career, broke into her office, stole personal correspondence, and distributed information suggesting she was engaged in a lesbian relationship. The court acknowledged that "not every action by one member of the armed services against another implicates military decision making, relates to the military mission, or is incident to service." (*Lutz, supra*, 944 F.2d at p. 1484.) The court concluded the defendants' acts "directed by one servicemember against another which further no conceivable military purpose and are not perpetrated during the course of a military activity surely are past the reach of *Feres*." (*Id.* at p. 1487.)

The relevant inquiry under *Feres* and its progeny is simply whether the challenged personnel action is incident to military service. Plaintiff, however, would have us focus on the nature of his duties, either at the academy or those he might assume if he were allowed to transfer to the State Military Reserve or retired reserve. His focus is misdirected. We must consider the military character of the challenged conduct, not the plethora of duties to which plaintiff was, or might have been, assigned. The decision that plaintiff was no longer qualified to perform the physical tasks demanded by the military is, without doubt, a military decision integrally connected to the unique demands of the National Guard. The question is not whether the National Guard can reasonably accommodate plaintiff, but whether the Legislature has entitled guardsmen to bring civil claims under the FEHA compelling the military to subscribe to the same standards as civilian employers. Because the personnel action to terminate a disabled guardsman without providing reasonable accommodation was incident to military service within the meaning of *Feres*, the demurrer was properly sustained. Moreover, plaintiff has failed to allege any facts to escape the so-called *Feres* doctrine.

## V

### *Mindes* and Justiciability

Plaintiff argues that despite any obstacles presented by the *Feres* doctrine, his claim remains justiciable under an alternative analysis available in *Mindes v. Seaman* (5th Cir. 1971) 453 F.2d 197 (*Mindes*). The Attorney General discounts the continuing vitality of *Mindes* and insists that to the extent *Mindes* survives, it does not render plaintiff's tort claim justiciable. Although we need not weigh in on this analytical quagmire, it is important to clarify what we decide in this case and what we do not.

As we noted above, the Attorney General, and indeed the trial court, framed the threshold issue as one of justiciability. *Mindes* and many other cases have referred to the justiciability of claims brought by members of the military. In *Mindes* itself, the court considered the policy implications of justiciability. "What we really determine is a judicial policy akin to comity. It is a determination made up of several subjective and interrelated factors. Traditional judicial trepidation over interfering with the military establishment has been strongly manifested in an unwillingness to second-guess judgments requiring military expertise and in a reluctance to substitute court orders for discretionary military decisions." (*Mindes, supra,* 453 F.2d at p. 199.)

The United States Supreme Court, however, has analyzed the issues implicating military decisions differently. We applied the Supreme Court's analytic framework as articulated in *Feres* by utilizing a deferential approach to statutory construction. The Supreme Court in *Feres* did not say the case was not justiciable, but it did engage in a thorough review of Congressional intent in construing the meaning of the statute. While the ultimate result might have been the same, the analytic route is much different. We have followed the Supreme Court's lead by attempting to ascertain the scope of the FEHA with due deference to the unique needs and requirements of the military.

In *Chappell, supra,* 462 U.S. 296, the Supreme Court used a comparable deferential approach to determining whether enlisted military personnel may maintain a suit to recover damages from a superior officer for alleged constitutional violations also known as "*Bivens* actions." (*Bivens v. Six Unknown Fed. Narcotics Agents* (1971) 403 U.S. 388 [29 L.Ed.2d 619, 91

S.Ct. 1999] (*Bivens*).) Finally, in *Stanley, supra*, 483 U.S. 669, the Supreme Court dispelled any argument that the analysis of *Bivens* actions by military personnel differed from the analysis of tort claims. "Today, no more than when we wrote *Chappell*, do we see any reason why our judgment in the *Bivens* context should be any less protective of military concerns than it has been with respect to [Tort Claims Act] suits, where we adopted an 'incident to service' rule. . . ." (*Id.* at p. 681.) "We therefore reaffirm the reasoning of *Chappell* that the 'special factors counselling hesitation'—'the unique disciplinary structure of the Military Establishment and Congress' activity in the field,' [citation]—extend beyond the situation in which an officer-subordinate relationship exists, and require abstention in the inferring of *Bivens* actions as extensive as the exception to the [Tort Claims Act] established by *Feres* and *United States v. Johnson*. We hold that no *Bivens* remedy is available for injuries that 'arise out of or are in the course of activity incident to service.' " (*Id.* at pp. 683–684.)

We are not called on to determine whether there is a meaningful distinction between the concept of justiciability (*Mindes*) and the deferential approach to analyzing statutory remedies (*Feres*) or inferring constitutional remedies (*Chappell*). In this case, we hold that the FEHA does not provide a remedy to plaintiff as an active duty member of the California National Guard. We reach this result by applying the analytical framework provided by the Supreme Court rather than the mushier concept of justiciability as embodied in *Mindes*.

Moreover, we need not decide whether *Mindes* provides an alternative and viable analysis. The Attorney General contends that *Stanley* supplants *Mindes*, a position advanced by the First Circuit Court of Appeals in *Wright, supra*, 5 F.3d 586. "Most significantly for our purposes, the Fifth Circuit, progenitor of the *Mindes* multifactor test, has abandoned that approach in favor of a *per se* prohibition. [Citation.] In short, *Mindes* has been banished from its homeland." (*Id.* at p. 590, fn. 6.) Yet the Ninth Circuit Court of Appeals continues to use the *Mindes* test in determining "whether we may consider a constitutional challenge to a particular military decision." (*Wilkins, supra*, 279 F.3d at p. 788.) Plaintiff, as we pointed out above, has not asserted a claim based on a constitutional violation. Because our *Feres* analysis of the FEHA disposes of plaintiff's sole tort claim for damages, we need not attempt to clarify the doctrinal validity of justiciability under *Mindes*. We leave the task of clarification to another court or to legal scholars on another day.

In summary, we conclude:

■ 1. The FEHA does not provide remedies to National Guard members on state active duty when the challenged personnel action is incident to military service. (*Feres*, *supra*, 340 U.S. 135.) Plaintiff therefore cannot state a tort claim predicated on the FEHA as the targeted public policy.

■ 2. The challenged personnel action, that is, the decision to terminate plaintiff without offering reasonable accommodation, was incident to service as a matter of law. As a consequence, the demurrer was properly granted without leave to amend.

The judgment is affirmed.

Morrison, J., and Hull, J., concurred.